**Charles Lee McGEE**

v.

**UNITED STATES of America.**

**Civil Action No. 96–0923.
Crim. No. 90–60038–04.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Aug. 30, 1996.

Patricia Ann Thomas, Office of Patricia A. Thomas, Abbeville, LA, for Charles Lee McGee.

Charles Lee McGee, Oakdale, LA, Pro Se.

William J. Flanagan, Cristina Walker, U.S. Attorney's Office, Shreveport, LA, Brett L. Grayson, U.S. Attorney's Office, Lafayette, LA, for U.S.

## JUDGMENT

SHAW, Chief Judge.

Considering the Report and Recommendation issued by Magistrate Judge Methvin, the court record in this case, and the applicable jurisprudence, the Court concludes that the Report and Recommendation of the magistrate judge is correct and this Court adopts the conclusions set forth therein.

Accordingly, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that McGee's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 as to Count II of the bill of information is DENIED.

## REPORT AND RECOMMENDATION

METHVIN, United States Magistrate Judge.

Before the court is a motion by defendant, Charles L. McGee, to vacate, set aside or correct sentence under 28 U.S.C. § 2255. This case referred to me by Judge Shaw for a report and recommendation. For the following reasons, it is recommended that defendant's motion be DENIED.

## BACKGROUND

### A. Procedural History:

The original indictment in this case, filed September 14, 1990, charged three Broussard brothers with seven counts stemming from their arrests on April 28, 1989 in New Iberia, Louisiana while in possession of guns and cocaine.[1] The Broussards named McGee as their drug supplier, and in May 1989 Martin Broussard helped undercover agents induce McGee to travel from Texas to Iberia Parish to deliver three ounces of cocaine. McGee was arrested and pled guilty to state drug charges following his arrest.[2] The latter conviction was based upon the three ounces McGee personally delivered to Iberia Parish in May 1989. McGee was not, however, named in the original federal indictment as to the guns and cocaine possessed by the Broussards.

All three Broussards pled guilty on January 10, 1991 to Count 4 of a superceding indictment, charging them with possession with intent to distribute cocaine.

On April 24, 1991, a second superceding indictment added McGee as a defendant on the same seven counts (Rec.Doc. 114). Although it is not explicitly stated in the indictment, McGee was charged as a principal to the substantive crimes, inasmuch as he was the drug supplier but was not physically present at the time of the Broussards' arrest,

when the drugs and guns were seized. McGee pled guilty to a bill of information on January 10, 1992 charging the following crimes:

**Count I:** Possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1);

**Count II:** Using or carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)

(Rec.Doc. 176).[3]

McGee was sentenced on April 24, 1992 to twelve months in prison on Count I and to 60 months in prison on Count II, to run consecutive to Count I. (Rec.Doc. 195–196). McGee did not file a direct appeal. McGee has completed service of his sentence on Count I and currently is serving time on the § 924(c) charge.

A previous motion for post-conviction relief was denied on April 16, 1993 (Rec.Doc. 205). McGee filed the instant § 2255 motion on December 29, 1995, citing *Bailey v. United States,* 516 U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). McGee argues that he could not be convicted of a § 924(c) offense since he wasn't even in the same state as the gun involved in the transaction. Thus, McGee seeks to have the court vacate his conviction on the § 924(c) charge.

The government filed a response to McGee's § 2255 motion, contending that although McGee's conviction under the "use" prong of the statute may no longer be valid under *Bailey,* it is valid under the "carry" prong.

I granted McGee's request for court-appointed counsel, and ordered the government and the Federal Public Defender to file 1) supplemental briefs; 2) a joint statement regarding factual stipulations; and 3) a statement whether an evidentiary hearing was

---

**1.** Count 1 charged a conspiracy to possess with intent to distribute cocaine. Counts 2–5 charged substantive drug offenses. Count 6 charged a § 924(c) offense. Count 7 charged a firearms violation for possession of a sawed-off shotgun.

**2.** See Factual Basis filed January 10, 1991, Record Doc. 89.

**3.** The bill of information erroneously charged that McGee "did knowingly and intentionally

*possess* [a firearm] in relation to a drug-trafficking crime." However, the elements of the offense at the guilty plea correctly stated the statutory requirements that the defendant "use" or "carry" the firearm. The error contained in the bill of information has not been raised by either party. I therefore conclude that the guilty plea is not invalid on that ground.

necessary. In response to this order, both parties indicated that they would stipulate to the facts and did not require an evidentiary hearing. Soon after, however, McGee filed a motion to withdraw the parties' former agreement and to request an evidentiary hearing pursuant to *United States v. Briggs*, 939 F.2d 222 (5th Cir.1991).

The evidentiary hearing was set for May 28, 1996. Prior to the hearing, in accordance with a further court order, the parties submitted a joint statement setting forth the factual and legal disputes.

On May 28, 1996, a brief evidentiary hearing was held during which the parties stipulated to the facts per the written factual basis submitted at the time of McGee's guilty plea. The parties offered no additional legal arguments in support of their respective positions.

### B. McGee's Guilty Plea:

The bill of information charged McGee as a principal to two offenses physically committed by Phillip and David Broussard on April 28, 1989. The written factual basis filed at the time of McGee's plea, which the parties stipulate is accurate, states that on April 28, 1989, undercover law enforcement agents were attempting to make a purchase of cocaine from Phillip and David Broussard in New Iberia. The Broussards had traveled to the scene in a pick-up truck. The undercover agent entered the vehicle to determine whether the cocaine was present. Upon satisfying himself that it was, the agent returned to his own vehicle for the stated purpose of getting his money, when in fact he radioed for additional agents to move in and make the arrests. The factual basis states in pertinent part:

> * * * While he was in the suspects vehicle, he had observed a handgun on the passenger side. As agents converged, Agent Pohlman observed Phillip Broussard reaching for something on the floorboard and pulled his own weapon and advised both subjects to put their hands up. After David Broussard was thrown on the ground, Agent Pohlman retrieved cocaine from Phillip's right hand. Agent Bill Bonin had Phillip step out of the vehicle as

well. After the suspects were arrested and advised of their Miranda rights, Agent Pohlman reentered the cab and found on the floorboard a cocked sawed-off shotgun and a loaded .22 caliber H & R revolver (the revolver was on the passenger side of the vehicle).

(Rec.Doc. 183). As noted above, McGee was in Texas at the time these events transpired. He was charged in the superceding indictment as a principal in light of his role as supplier of the cocaine in question. The record is silent with respect to McGee's connection to the guns in question.

### LAW & ANALYSIS

#### A. The Scope of § 2255 Review:

■ In order to obtain habeas relief, a federal prisoner must generally file a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Section 2255 provides four grounds justifying relief: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; and, (4) that the sentence is otherwise "subject to collateral attack." Although this language appears broad, the scope of § 2255 relief is limited to "fundamental defects" causing a "complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

#### B. The Effect of *Bailey* on McGee's § 924(c) Conviction:

■ McGee argues that because he was in Texas at the time the firearm in question was being used in Louisiana, McGee cannot be convicted under either the "use" or "carry" prong of § 924(c) in light of the *Bailey* decision. McGee contends, therefore, that his 60–month sentence for this conviction should be set aside.

The Government responds that the factual basis in support of the guilty plea is sufficient to sustain the conviction of McGee as a prin-

cipal for "carrying" a firearm in violation of § 924(c)(1). Moreover, the Government argues, regardless of the *Bailey* decision, because McGee pled guilty as a principal, he never had to believe that his conduct personally entailed the "use" **or** "carrying" of a firearm.

Title 18 U.S.C. § 924(c)(1) imposes criminal penalties upon any person who "during and in relation to any ... drug trafficking crime ... uses or carries a firearm." The Supreme Court in *Bailey* held that the term "use" as it appears in the statute requires the government to show active employment of the firearm. *Bailey,* —— U.S. at ——, 116 S.Ct. at 506.

> The active-employment understanding of "use" certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm. We note that this reading compels the conclusion that even an offender's reference to a firearm in his possession could satisfy [the use prong of] § 924(c)(1). Thus, a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a "use," just as the silent but obvious and forceful presence of a gun on a table can be a "use."

*Id.,* —— U.S. at ——, 116 S.Ct. at 508.[4]

Importantly, *Bailey* did not define the scope of the "carry" prong of § 924(c). In fact, the Court reasoned that a more limited, active interpretation of "use" preserves a meaningful role for "carries" as an alternative basis for a charge, and that "there is no evidence to indicate that Congress intended to expand the meaning of "use" so far as to swallow up any significance for "carry." *Id.* at ——–——, 116 S.Ct. at 507–508. The Court reasoned:

> "While the "use" prong restricts the scope of § 924(c)(1), the Government has other means available to charge offenders who

mix guns and drugs. The "carry" prong, for example, brings some offenders who would not satisfy the "use" prong within the reach of the statute.

*Id.* at ——, 116 S.Ct. at 509. The court pointed out that "a firearm can be carried without being used, e.g., when an offender keeps a gun hidden in his clothing throughout a drug transaction." *Id.* at ——, 116 S.Ct. at 507.

There are no Fifth Circuit opinions post-*Bailey* which define the "carry" prong of the statute. However, since *Bailey* did not specifically address the "carry" issue, the Fifth Circuit's pre-*Bailey* test for "carry" bears mention. In *United States v. Pineda–Ortuno,* 952 F.2d 98 (5th Cir.1992), *cert. denied,* 504 U.S. 928, 112 S.Ct. 1990, 118 L.Ed.2d 587 (1992), the defendants were stopped in their vehicle at the border and cocaine and two firearms were found in the back seat. The Fifth Circuit upheld the conviction for "carrying" a firearm during and in relation to a drug trafficking crime, noting that the word "carry" derives from the French "carrier," which means to "transport in a vehicle." *Id.* at 104. The Court noted as relevant the fact that the firearms were in the vehicle during and in relation to the drug trafficking crime. *Id. See also, United States v. Speer,* 30 F.3d 605, 612 (5th Cir.1994) (the "carrying" requirement is met where a defendant operates a vehicle knowing the firearm is in the car).

Post–*Bailey* opinions from other circuits have addressed the "carry" issue, and generally employ the definition of "carry" as set forth in *Webster's* dictionary. "Carry" means "to move while supporting (as in a vehicle or in one's hands or arms): move an appreciable distance without dragging: ... bring along to another place." *United States v. Ramirez–Ferrer,* 82 F.3d 1149 (1st Cir. 1996) (evidence of a loaded gun next to a defendant on board a moving boat being used

---

4. In light of the foregoing, the court's statement to McGee at his guilty plea colloquy that "the government is not required to prove that the defendant actually fired the weapon or brandished it at someone in order to prove "use" as that term is used in Title 18, United States Code, Section 924(c)(1)," is no longer an accurate recitation of the law after *Bailey*—as to **defendants who are charged directly with a § 924(c) viola-** tion as opposed to those charged as principals. (Rec.Doc. 194 at pp. 11–12). However, as discussed *infra,* since *Bailey* does not change the law of principals as to § 924(c) offenses, the court's statement is still accurate insofar as the government was not required to prove that McGee **personally** brandished or otherwise "used" the gun in order to convict McGee under § 924(c).

for illegal drug distribution was sufficient to support his conviction under the "carry" prong); *United States v. Baker*, 78 F.3d 1241, 1246 (7th Cir.1996) (transporting a gun in a car within reasonable reach constitutes "carrying" for § 924(c)(1) purposes); *United States v. Riascos–Suarez*, 73 F.3d 616, 623 (6th Cir.1996) (a defendant's conduct held sufficient for conviction under the "carry" prong where the defendant had a gun on the driver's side of the dashboard console of a car that also contained drugs).

Here, I find that the facts underlying McGee's guilty plea are sufficient to sustain a conviction for "carrying" a firearm in violation of § 924(c)(1). During the drug transaction, there was a loaded handgun and a cocked sawed-off shotgun on the floor of the vehicle from which the sale was being conducted. Also, the agent had viewed the handgun on the truck's floorboard when he entered the truck to ensure that the cocaine was present. It is not certain whether Phillip Broussard was reaching for the handgun, the shotgun or the drugs when he reached down into the truck upon the agents' approach. However, there is clearly sufficient evidence to establish that McGee's co-defendants Phillip and David Broussard were "carrying" firearms in connection with the drug transaction. The weapons were immediately available for use and within Phillip Broussard's reach. The handgun was loaded and the shotgun was "cocked," and both firearms were located on the floorboard of the truck next to which Phillip Broussard was standing during the drug transaction.

## C. Principals Under § 924(c)

█ The second aspect of this issue is the potential impact of *Bailey* on the fact that McGee pled guilty to the § 924(c)(1) charge as a principal. McGee claims that at the time he pled guilty, he believed that his activity was criminal under the pre-*Bailey* interpretation of § 924(c)(1). McGee argues that *Bailey* now deprives the government of any basis for his conviction because of his physical distance from the guns.

The Government maintains that because McGee pled guilty as a principal, he never had to believe that his personal conduct entailed the "use" or "carrying" of a firearm. The government contends that the location of the guns is relevant only to determining whether McGee's co-defendants could be convicted under § 924(c). If so, then McGee was properly charged as a principal. The government argues that McGee's physical location vis-a-vis the guns is immaterial under the doctrine of principals.

The definition of "principal" is found in 18 U.S.C. § 2:

§ 2. Principals.

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

The *Bailey* opinion did not address the issue of principals charged under § 924(c). As the Government correctly points out, there are no decisions from the Fifth Circuit after *Bailey* that deal specifically with the relationship between the *Bailey* decision and "principal" liability. Nevertheless, decisions from other circuits indicate that the general theory of "principals" is still viable as to § 924(c) convictions.

In *Ramirez–Ferrer*, the First Circuit noted that "either defendant may be convicted as 'aiding and abetting' if one defendant is found to have 'carried' a firearm in violation of § 924(c)(1) ..." *Id.*, 82 F.3d at 1152. The court upheld the convictions of both defendants under § 924(c)(1)'s "carry" prong, concluding that the jury found sufficient evidence to attribute knowledge and intent to benefit from the gun to both defendants, supporting a finding that they "carried" a loaded gun in relation to their drug crime. *Id.* at p. 1154.

Subsequent to *Bailey*, the Third Circuit has expressly rejected the claim that aiding and abetting (principal) liability is inapplicable to a charge under § 924(c). *United States v. Price*, 76 F.3d 526 (3rd Cir.1996). In response to Price's argument to this effect, the court stated:

We reject this argument. Under 18 U.S.C. § 2(a), "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal." This section has been routinely applied in conjunction with section 924(c) to convict individuals of "aiding and abetting in using or carrying a firearm" in violation of 18 U.S.C. § 924(c). See, e.g., *United States v. Wacker*, 72 F.3d 1453 (10th Cir.1995); *United States v. Pipola*, No. 95–1264 (2d Cir. Dec. 22, 1995); *United States v. Buchanan*, 70 F.3d 818, 825 (5th Cir.1995); *Dillon v. United States*, 69 F.3d 537, 1995 WL 631434 (6th Cir.1995); *United States v. Rivera*, 68 F.3d 5, 7 (1st Cir.1995); *United States v. Easter*, 66 F.3d 1018, 1023–24 (9th Cir.1995), *cert. denied sub nom Jemerigbe v. United States*, —— U.S. ——, 116 S.Ct. 547 [133 L.Ed.2d 450] (1995), and *cert. denied sub nom Ronnie O. Lea v. United States*, —— U.S. ——, 116 S.Ct. 742, 133 L.Ed.2d 691 (1996); *United States v. Warren*, 42 F.3d 647, 651 (D.C.Cir.1994); *United States v. Martin*, 25 F.3d 211, 213 (4th Cir.1994); *United States v. Chandler*, 996 F.2d 1073, 1105 (11th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2724, 129 L.Ed.2d 848 (1994) * * *

*Id.* at p. 529.

Similarly, the Fourth Circuit affirmed the post-*Bailey* § 924(c) conviction of a defendant whose cohort had brandished a gun during a drug transaction. *United States v. Cook*, 76 F.3d 596 (4th Cir.1996). Although the court did not expressly address the law of principals, it concluded that "*Bailey* does not concern or address Cook's only argument concerning § 924(c)—that he was unaware that [his cohort] had 'used' a gun during the drug transaction ..." *Cook*, 76 F.3d at 603.

I conclude that *Bailey* has no effect on the law of principals, and therefore on McGee's guilty plea to the § 924(c)(1) charge. Both before and after *Bailey*, the conduct of Phillip Broussard constituted a violation of § 924(c) under at least the "carry" prong of that statute. Both before and after *Bailey*, there is aider and abetter liability under § 924(c) and 18 U.S.C. § 2. Consequently, McGee's contentions are meritless that *Bailey* has eliminated his criminal liability under § 924(c).

I further conclude that other factors contributed to McGee's guilty plea besides his allegedly mistaken understanding of the law. McGee concedes he faced a maximum exposure of over 100 years on the seven counts in the indictment, and when offered a plea, he took the charges with the least exposure (Defendant's Memorandum, p. 11). There is no factual support for McGee's assertions that he was acting under any mistake of fact or law at the time of his guilty plea. Furthermore, considering the foregoing authorities, I conclude that *Bailey* offers no relief to McGee on either the "carry" issue, or the principal issue.

## D. Voluntariness of Plea:

█ McGee further argues that because there is no evidence to support his plea as a principal to the § 924(c) charge, his plea was not an intelligent and voluntary one. More particularly, McGee contends that there is no evidence of a "community of intent" with the Broussards as to the resale of the cocaine or as to the use of firearms in the drug transaction. This allegation has no relation to the *Bailey* issue. The Government correctly argues that these claims that McGee's plea was not supported by a factual basis and thus was not voluntary are not cognizable under § 2255.

█ It should first be noted that a conviction under § 924(c) as an aider and abetter normally requires proof that the defendant either 1) had knowledge that a cohort would use or carry a firearm; 2) performed some affirmative act relating to the use or carrying of the firearm; or 3) is being held responsible for the reasonably foreseeable substantive crimes of his co-conspirators in furtherance of the conspiracy (the "Pinkerton" instruction). *See Paese v. United States*, 927 F.Supp. 667 (S.D.N.Y.1996) and cases cited therein.

However, McGee's conviction is the result of a guilty plea, and his contentions are in the nature of a collateral attack under § 2255. In asserting now that he did not

understand the charges at the time of his plea, McGee is basically alleging a violation of Rules 11(d) and (f), F.R.Cr.P.[5] Rule 11 is concerned with insuring that the defendant's plea is voluntary (i.e., not coerced) and requires that the defendant be advised and understand the following: (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty and the maximum possible penalty; (2) that the defendant has the right to be represented by an attorney at every stage of the proceeding; (3) that the defendant has the right to plead not guilty and to be tried by a jury; (4) that if the guilty plea is accepted by the court there will not be a trial; and, (5) that if the defendant is questioned by the court about the offense to which the defendant has pled, the defendant's answers can be used later against the defendant.

A Rule 11 violation does not constitute a constitutional or jurisdictional error cognizable under § 2255. *United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 2087–88, 60 L.Ed.2d 634 (1979). The petitioner must plead and prove cause and prejudice in order to raise a Rule 11 violation pursuant to § 2255 that was not presented on direct appeal. *Id.*

In *United States v. Saldana,* 731 F.2d 1192, 1193 (5th Cir.1984), the Fifth Circuit examined the four types of Rule 11 violations which would survive the *Timmreck* rule: (1) a jurisdictional and constitutional violation; (2) "a fundamental defect resulting in a complete miscarriage of justice;" (3) "an omission that is not consistent with the rudimentary demands of fair procedure;" or (4) a situation presenting "exceptional circumstances." *Id.* Saldana had established in a § 2255 motion that he had not been fully apprised of the effect of a special parole term during his guilty plea. The court found that none of the *Timmreck* exceptions applied, and held that Saldana was not entitled to § 2255 relief absent proof that he would not have pled guilty if the district court had fully explained the nature and consequences of the special parole term. *Saldana,* 731 F.2d at 1193.

Relief under § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Capua,* 656 F.2d 1033, 1037 (5th Cir.1981); *United States v. Vaughn,* 955 F.2d 367, 368 (5th Cir.1992). Moreover, a defendant cannot raise an issue that is constitutional or jurisdictional in nature for the first time on collateral review without showing both "cause" for his procedural default and "actual prejudice" resulting from the error, or demonstrate that the failure to consider the claim will result in a "fundamental miscarriage of justice." *United States v. Samuels,* 59 F.3d 526, 528 (5th Cir.1995); *United States v. Shaid,* 937 F.2d 228, 232 (5th Cir.1991). Such a miscarriage of justice would result if the error caused the defendant to be convicted of a crime of which he is innocent.

The Fifth Circuit has previously permitted attacks on guilty pleas on the basis of intervening decisions modifying the substantive criminal law defining the offense due to the possibility that such a decision may render the factual basis of a plea insufficient and therefore involuntary. *United States v. Andrade,* 83 F.3d 729, 731 (5th Cir.1996). In *Andrade,* the court held that the factual basis for the petitioner's guilty plea was insufficient because it failed to establish the petitioner's active employment of the firearm under the "use" prong of the statute under *Bailey.*

The Seventh Circuit recently considered a petitioner's alleged Rule 11 violations challenging the voluntariness and factual basis of the petitioner's plea which was not based on

---

**5.** Rule 11 provides in pertinent part:

(d) **Insuring That the Plea is Voluntary.** The court shall not accept a plea of guilty . . . without first, . . . determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty . . . results from prior discussions between the attorney for the government and the defendant or the defendant's attorney.

(f) **Determining Accuracy of Plea.** Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

a change in the underlying substantive law. *Daniels v. United States*, 54 F.3d 290, 292 (7th Cir.1995). The petitioner argued that the district court violated Rules 11(d) and (f) by failing to inquire whether his plea was voluntary and had a sufficient factual basis. *Id.* The petitioner never pursued a direct appeal from this conviction. *Id.* at 293. The court held that the petitioner had forfeited his right to allege these Rule 11 violations in his § 2255 petition. *Id.* Further, the court stated that in order to collaterally attack his conviction, he had to demonstrate "cause for his failure to raise the matter on direct appeal and actual prejudice from the errors of which he complains." *Id.* (quoting *Ambriz v. United States*, 14 F.3d 331, 333 (7th Cir. 1994)). The court held that because the petitioner had failed to show cause for his failure to raise the Rule 11 violations on direct appeal, he may not raise these claims in his § 2255 petition. *Id.*

In an unpublished Seventh Circuit opinion, the court held that a narrow exception to the "cause and prejudice" requirement exists in extreme cases where a defendant claims actual innocence. *Sullivan v. United States*, No. 94–2159, 1995 WL 399023, slip op. at * * 1–2 (7th Cir. July 6, 1995). The court remanded the case to the district court for an evidentiary hearing to determine if the facts supported Sullivan's claim of innocence. On remand, the court upheld the district court's denial of the plaintiff's § 2255 motion to vacate. *Sullivan v. United States*, No. 96–1353, 1996 WL 290278, slip op. at * 2 (7th Cir. May 28, 1996). The Seventh Circuit held that for the fundamental miscarriage of justice exception to apply, Sullivan must demonstrate that the district court's error probably resulted in the conviction of an innocent person. *Id.* (citing *Schlup v. Delo*, —— U.S. ——, ——, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995)). The court concluded that the evidentiary hearing revealed no evidence that Sullivan was probably innocent; rather, it confirmed that Sullivan did commit the crime of conspiracy. *Id.* Therefore, the fundamental miscarriage of justice exception did not apply.

There is no evidence here that McGee had any misconception about his charge and plea

as a principal, nor is there any evidence that McGee would have changed his guilty plea had he been informed of the *Bailey* decision. As previously discussed herein, there is no legal support for the proposition that *Bailey* has changed the law of principals. Furthermore, *Bailey* only impacted the "use" prong of § 924(c). Under the facts presented, there is sufficient evidence to support McGee's conviction as a principal under the "carry" prong of § 924(c)(1). McGee alleges that his "cause" for failing to raise this claim on appeal was due to the fact that *Bailey* was decided after his conviction. However, as discussed above, I find that *Bailey* has no effect on McGee's § 924(c)(1) conviction, and would not have had any impact on McGee's guilty plea had it been decided earlier.

McGee makes the additional arguments that there was no factual basis for his guilty plea as a principal and that had he realized this he would not have pled guilty. However, as discussed above, these arguments were not submitted via direct appeal. Thus, in order to wage a collateral attack of his guilty plea based on these Rule 11 violations pursuant to § 2255, McGee had to demonstrate cause and prejudice or that his conviction amounts to a fundamental miscarriage of justice due to his actual innocence. McGee failed to make this showing in the briefs submitted to the court or at the evidentiary hearing which was conducted in this case on May 28, 1996. I also note McGee's failure to assert a plea of actual innocence. I conclude that McGee has not shown that a "fundamental miscarriage of justice" would result from a failure to entertain his challenge of the factual basis and thereby the voluntariness of his guilty plea as a principal. *Samuels, supra*, 59 F.3d at 528 (5th Cir.1995). I conclude, therefore, that McGee's procedural default by not filing a direct appeal of his conviction based on these alleged Rule 11 violations may not be excused and may not be raised now via a § 2255 petition.

McGee also cites *United States v. Briggs*, 939 F.2d 222 (5th Cir.1991) in support of his assertion that his guilty plea was involuntary. *Briggs* is not factually similar to the case at hand. In *Briggs*, the defendant alleged that she "pled guilty to a crime which she now

understands not to encompass her conduct, and, therefore, her plea of guilty was not knowing and intelligent." *Id.* at 228. In *Briggs,* an evidentiary hearing was considered necessary for a determination of whether the defendant "unknowingly and unintelligently" pled guilty. *Id.* Here, McGee pled guilty as a principal to a crime which still encompasses his conduct. His conduct was criminal at the time of the guilty plea and is criminal today since *Bailey* is not applicable. Also, there was an evidentiary hearing held in this case which was unproductive for the most part given the parties' stipulation to the facts as filed into the record at the time of McGee's guilty plea.

## CONCLUSION

For the foregoing reasons, I recommend that McGee's motion to vacate, set aside or correct sentence as to Count II of the bill of information pursuant to 28 U.S.C. § 2255 be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), F.R.C.P., the parties have ten (10) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

**A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.** *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir.1996).

Lafayette, Louisiana this 3rd day of July, 1996.