**William FERRELL IV, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civil No. 96–CV–732438.
Criminal No. 92–CR–80287.

United States District Court, E.D. Michigan.

April 30, 1997.

John Minock, Ann Arbor, for Plaintiff.

James King, Assistant U.S. Attorney, Detroit, for Defendant.

### *OPINION AND ORDER GRANTING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 AND SETTING A HEARING FOR RE-SENTENCING*

ROSEN, District Judge.

## I. *INTRODUCTION*

This case is presently before the Court on Petitioner William Ferrell's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct his sentence. In light of the recent Supreme Court decision in *Bailey v. U.S.*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), Petitioner claims that: (1) There is insufficient evidence to support his conviction under 18 U.S.C. § 924(c) [1] for using a firearm in relation to a drug trafficking crime; and (2) The jury was erroneously instructed on this Count. In its Response, the Government contends that the Motion should be denied because: (1) The evidence supports Petitioner's conviction for "using" a firearm even under post-*Bailey* standards; and (2) A jury properly instructed under post-*Bailey* standards on both the "carry" and the "use" prongs of 18 U.S.C. § 924(c) would have convicted Petitioner of carrying a firearm. Having reviewed the parties' briefs and conducted a hearing on this matter, the Court is now prepared to rule. This Opinion and Order sets forth that ruling.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

On April 1, 1992, a Federal Grand Jury indicted Petitioner with: (1) Conspiracy to possess with intent to distribute and distribute cocaine base, in violation of 21 U.S.C. § 846; (2) Aiding and abetting possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2; and (3) Possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). In particular, this last Count read "on or about August 29, 1990, ... William Ferrell ... during and in relation to a drug trafficking crime ... used a Charter Arms .38 caliber revolver...."

This Indictment was based on the following incident. On the evening of August 29, 1990, an undercover police officer arranged to purchase two ounces of cocaine base from Petitioner's Co–Defendant, Charleston Adams, at a bowling alley. The officer and Adams had had previous meetings where Adams was accompanied by another individual who described himself as a "look-out." Whether this "look-out" was Petitioner and whether he was ever armed is not specified in the record.

Nevertheless, the drug deal was eventually moved from the bowling alley parking lot to a hotel parking lot across the street. While the undercover officer and Adams were negotiating inside the undercover officer's car, Petitioner, who had been waiting in Adams' nearby car, approached the hotel, apparently because he had become concerned and/or impatient about how much time the deal was taking. Shortly thereafter, other officers, who had been observing this sequence of events, arrested Adams and some other individuals who had remained in Adams' car. Next, they proceeded to search for Petitioner whom they had observed exiting Adams' car and heading towards the hotel. Eventually, the officers searched in some bushes along the corner of the hotel wherein they found Petitioner kneeling with a firearm a few feet from his knee.

When the Court submitted the case to the jury, the Court explained to the jury the three elements of "Possession of a Firearm During and in Relation to a Drug Trafficking Crime":

> First, on or about the date charged in the indictment, Mr. Ferrell used a firearm ...
>
> Second, that Mr. Ferrell had knowledge that what he was using was in fact a firearm.
>
> Third, that he did so during and in relation to the commission of a drug trafficking

---

1. 18 U.S.C. § 924(c) provides in pertinent part that: "Whoever, during and in relation to any drug trafficking crime, for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall be guilty of an offense against the United States."

crime, for which he may be prosecuted in a court of the United States of America. (Trial Transcript, 10/08/92). Next, the Court instructed the jury on how it should construe "use" within the context of § 924(c):

> For the purposes of the crime charged in Count 6, the word "use" does not require the Government to show that Mr. Ferrell brandished or displayed the firearm. Rather, it is sufficient to convict Mr. Ferrell, if you find, beyond a reasonable doubt, that he had the firearm under his control in any manner which facilitated the distribution of crack cocaine. Thus, if you find beyond a reasonable doubt ... that Mr. Ferrell kept a firearm readily accessible to secure or to enforce a drug transaction, you may find him guilty on Count 6.

(Trial Transcript, 10/08/92). These instructions are commonly called "Fortress Theory" instructions because they enabled juries to convict defendants for using firearms even where the defendants merely kept firearms readily accessible. *See, United States v. Moore,* 76 F.3d 111, 113–14 (6th Cir.1996). Due to the *Bailey* decision, these instructions have been held "inadequate." *Id.* at 114.

Based on the events and instructions described above, the jury found Petitioner guilty of all counts on October 8, 1992. Thereafter, Petitioner filed a Motion for a New Trial, arguing that he would have been acquitted had his trial lawyer called Adams to testify that Petitioner did not conspire with him to sell cocaine. On April 27, 1993, the Court denied this Motion finding that Adams' potential testimony would not have likely led to acquittal since the evidence against Petitioner was so strong. The Sixth Circuit affirmed this ruling on appeal.

On October 18, 1996, Petitioner filed the instant 28 U.S.C. § 2255 Motion where he argued that he had received ineffective assistance of counsel and that he should have his sentence for "use" of a firearm vacated in light of *Bailey.* On January 17, 1997, the Court denied Petitioner's ineffective assistance of counsel claim, but granted a hearing on Petitioner's *Bailey* argument. Pursuant to this hearing, the Court appointed counsel for Petitioner and ordered supplemental briefing.

## III. *ANALYSIS*

At issue in this § 2255 Motion is how the Supreme Court's decision in *Bailey* and the Sixth Circuit's subsequent interpretation of 18 U.S.C. § 924(c) should affect Petitioner's case. Specifically, the Court must determine if pursuant to post-*Bailey* standards, the jury would necessarily have convicted Petitioner for using a firearm in relation to a drug trafficking crime under 18 U.S.C. § 924(c). Thus, the Court will first turn to the *Bailey* decision and then focus on the Sixth Circuit cases that have interpreted *Bailey* and further defined the parameters of § 924(c).

### A. *The Bailey Decision and Its Effect.*

The *Bailey* Court examined "whether evidence of the proximity and accessibility of a firearm to drugs or drug proceeds is alone sufficient to support a conviction for 'use' of a firearm during and in relation to a drug trafficking offense...." — U.S. at ——, 116 S.Ct. at 503. In *Bailey,* pursuant to a consolidated action, the appellants challenged § 924(c) convictions where the weapons were, in one case, locked in a car trunk, and in the other, locked in a footlocker inside a closet. When it decided these challenges, the Court adopted a definition of "use" of a firearm in the § 924(c) context that was significantly narrower than that which courts had been applying. Specifically, the Court held, in a unanimous decision, that "use" means "active employment," such as "brandishing, displaying, bartering, striking with ... firing or attempting to fire" a firearm or making "a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense." *Id.* at ——, 116 S.Ct. at 508. Under this definition, "[s]toring a gun near drugs or drug proceeds or secreting one for possible future employment does not constitute 'use,'" as courts had previously held and instructed juries upon pursuant to the "Fortress Theory." *Moore,* 76 F.3d at 112. Moreover, "[i]f the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not 'used.'" *Bailey,* —— U.S. at ——, 116 S.Ct. at 509.

In light of *Bailey,* the Sixth Circuit has had the opportunity to re-formulate its

§ 924(c) "use" jurisprudence. In *United States v. Anderson*, 89 F.3d 1306, 1314 (6th Cir.1996), the Court held that because the defendant reached for the gun [under his mattress] as the police entered his apartment[,] his act of reaching for the gun was "calculated to bring about a change in the circumstances of the predicate offense." Securing the gun would influence the actions of people entering the apartment. Thus, the Court concluded that the defendant had "used" a firearm within the meaning of *Bailey. Id.*

■ However, in *United States v. Myers*, 102 F.3d 227, 236 (6th Cir.1996), the Sixth Circuit held that because the firearms were merely found under the front passenger seat of a car that defendant was driving, he was not actively employing them, even though he knew that one of his co-defendants and co-conspirators had brought one of the firearms "in case something went wrong." Finally, in *United States v. Allen*, 106 F.3d 695, 702 (6th Cir.1997), the Court stated that

[o]n the record below, a jury would not necessarily have to conclude that [the defendant] "used" a firearm. Just as Allen reached for the pistol in his briefcase, he was apprehended by Officer Rogers. Although Allen certainly intended to "use" his pistol, and may have been only a fraction of a second away from grabbing it, the record is insufficient for us to conclude the jury determined he definitely did use it.

Reading these cases together in light of *Bailey*, use of a firearm for § 924(c)(1) purposes requires clear evidence in the record that the defendant actively and physically manipulated the firearm during the drug deal or that he referred to the firearm, by speech or gesture, including "the silent but obvious and forceful presence of a gun on a table," during the course of the deal. *Bailey*, — U.S. at —, 116 S.Ct. at 508.

### B. *Under Bailey, Petitioner May Not Have Used a Firearm.*

In his Motion to Vacate, Petitioner argues that the jury instructions were inadequate and that the evidence adduced at his trial is insufficient to support his conviction for using a firearm under *Bailey* and its progeny.

The Government, however, contends that even under the more stringent definition of use that *Bailey* annunciated, a jury still would necessarily have convicted Petitioner of "using" a firearm in relation to a drug trafficking crime under 18 U.S.C. § 924(c).

### 1. *Petitioner Must Establish Cause and Prejudice for Bringing This Collateral Attack.*

■ Because Petitioner did not raise the sufficiency of evidence and jury instruction issues on direct appeal, he must first establish a basis for the Court to consider his § 2255 petition at this late date. Thus, he must show: (1) Cause for his failure to previously raise these arguments; and (2) Actual prejudice to him of "constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

■ As the Government concedes, Petitioner has met the "cause" prong due to the intervening *Bailey* decision which this Court must apply retroactively. *See Callanan v. United States*, 881 F.2d 229, 232 (6th Cir. 1989). On the other hand, the "actual prejudice" prong means that a court must vacate the conviction unless it finds that the jury would necessarily have convicted the petitioner under a *post-Bailey* jury instruction. *See, Moore*, 76 F.3d at 112. Thus, the prejudice prong remains in dispute.

### 2. *Petitioner's Use of a Firearm.*

■ The Government argues that Petitioner "used" the firearm for *Bailey* purposes because a jury could have concluded that Petitioner was acting as an armed look-out for Adams' drug transaction with the undercover officer. Petitioner, however, asserts that because *Bailey* requires an active employment of a firearm, something more than being found with a gun in some bushes near where a drug crime occurs is necessary.

■ In order to be guilty of using a firearm in relation to a drug trafficking crime under the *Bailey* interpretation of 18 U.S.C. § 924(c), the defendant must actively employ the firearm in the predicate offense. *Bailey*, — U.S. at — – —, 116 S.Ct. at 505–06. Active employment "includes brandishing,

displaying, bartering, striking with, ... firing or attempting to fire ... [or making] a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense." Id. at ——, 116 S.Ct. at 508.

In the instant matter, it seems that Petitioner may have "used" a firearm (in the ordinary meaning of the word) in the predicate offense to the extent that he may have been acting as an armed look-out for Adams' deal with the undercover agent. Specifically, the testimony at trial suggested that Petitioner became concerned about why the deal was taking so long, whereupon he exited the car and headed towards the hotel. Ultimately, he was found in some bushes near the hotel with a firearm a few feet from him.

Whether acting as an armed look-out can constitute use of a firearm under *Bailey* is a question which the Fifth Circuit has addressed. In *United States v. Garcia*, 86 F.3d 394, 397 (5th Cir.1996), the defendant had a firearm concealed in his waistband and was surveying the area around him while a co-defendant loaded cocaine into a car. Thus, the Court found that the jury could have inferred that the defendant was acting as an armed look-out. *Id.* at 403. In reversing his conviction for "using" a firearm, however, the Fifth Circuit held that in acting as a look-out, the defendant had merely carried and/or possessed the firearm because he kept it concealed. *Id.* Moreover, the Court stated that:

> The fact that [the defendant] could have been indicted under the same statute for carrying a firearm is irrelevant. Camacho was indicted for using a firearm, not carrying one. Because there is insufficient evidence to show that he used a firearm during a drug transaction, we must reverse his 18 U.S.C. § 924(c) conviction.

*Id.*

In the dissent in *Garcia*, upon which the Government relies, Judge Jones argued that the Court should have affirmed the use conviction. In describing her reasoning, Judge Jones observed that:

> [The defendant] was personally armed with his pistol and was on duty guarding the large-scale cocaine conspirators' stash house when the police arrived. As [the defendant] opened the door for them, one officer saw the bulge in his waistband underneath his shirt, suspected Camacho was armed, and reached to remove the pistol even as [the defendant was arguably] himself reaching for it. Whether these acts constituted "brandishing" or "displaying" a firearm presented in my view, a jury question. If the jury believed that [the defendant] was armed with a pistol immediately available to him as he guarded the stash house, he was actively using it within the meaning of section 924(c)(1).

> The majority acknowledges that [the defendant] could have been indicted for "carrying" the firearm under section 924(c)(1), and I agree that would have been possible. *Bailey* does not, however, specify that carrying and using firearms are mutually exclusive comes within the same statutory provision; rather, it held that use could not be interpreted so broadly as to subsume completely the crime of illegal carrying.

*Garcia*, 86 F.3d at 404 (Jones, J., dissenting). Although the Court agrees with, and has much sympathy for, Judge Jones' position, the Court cannot rely on her reasoning here. First, in this § 2255 context, the Court must do more than find questions for the jury. Rather, the Court must find what the jury necessarily would have concluded based on the evidence at trial. Second, the Sixth Circuit held in *Anderson, supra*, 89 F.3d at 1314, and in *Allen, supra*, 106 F.3d at 702, that there must be clear evidence in the record which demonstrates an active reach for the weapon. Finally, the Sixth Circuit has also held that the carry and the use prong are to be distinguished and analyzed separately under *Bailey*. See, *United States v. Moore*, 76 F.3d 111, 113 (6th Cir.1996); (use means active employment, while carrying means physical transportation and possession; mere possession is neither using nor carrying); *United States v. Riascos–Suarez*, 73 F.3d 616, 623 (6th Cir.1996) (same).

Thus, the Court will turn to the plain language of *Bailey*. In *Bailey*, the Supreme Court held that to be convicted of using a firearm under § 924(c)(1), the defendant must actively employ the firearm, including

"brandishing, displaying, bartering, striking with ... firing or attempting to fire" a firearm or making "a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense." *Id.* at ——, 116 S.Ct. at 508. Given that Petitioner was hiding in the bushes, without Adams or the undercover agent having knowledge of his whereabouts or his activities, it is clear that he did not "refer" to the firearm to those actually involved in the deal.

■ However, simply because the Defendant did not openly refer to the gun in front of those who were party to the drug transaction does not mean that the gun was not "used" *by the Defendant* in connection with the transaction and in a way "calculated to bring about a change in the circumstances of the predicate offense." In the Court's view, the test of whether the Defendant "used" the gun in connection with the drug transaction must be viewed from the Defendant's perspective and likely intent. Put another way, if a Defendant openly brandishes a gun or otherwise utilizes it in an active, rather than passive, sense, and in so doing, intends to change the circumstances of the transaction by adding the weight of the gun to his side, then he is "using" the gun within the meaning of the statute. The fact that those immediately party to the transaction are not specifically aware of the Defendant's presence as a look-out with a gun does not alter the fact that, in holding the gun on the deal, the Defendant is calculating and intending to alter the circumstances of the deal— even if the two actually doing the transaction are not aware of his intent. To hold otherwise would ignore common sense as it would be to say that an armed look-out holding a gun on the transaction was not "using" a gun in connection with a drug transaction. Clearly, in this context, the Defendant is "actively employing" the firearm, whether or not the others know about it. Further, the Court agrees with Judge Jones' observation in her *Garcia* dissent that just because the Defendant's conduct may constitute "carrying" under the statute does not mean that conduct may not also be a "use" within the definition of the statute. The fact that there may be some overlap does not mean the terms are mutually exclusive.

However, having said this, the Court finds that the inquiry presented in the instant case does not end with the Court's framing of a definition in the context of the possible conduct. Rather, here, the Court's inquiry must focus upon whether a jury necessarily would have found that Petitioner brandished, displayed, fired, or otherwise actively utilized the firearm given the record facts of this specific case. The evidence before the jury was that Petitioner left Adams' car and headed towards the hotel because he was anxious about why the deal was taking so long. When the police found him in some nearby bushes after his co-conspirators had been arrested, they also found a firearm a few feet from his knee. Thus, while it is certainly true that the jury may have inferred that Petitioner had the gun aimed at the car where the deal was occurring in order to provide security for the deal, it is equally true that the jury may have found that Petitioner kept the weapon concealed and simply discarded it once his co-conspirators were arrested and his own arrest became inevitable. For the reasons indicated earlier, the former would be a "use," while the latter would be mere possession and physical transportation—i.e., carrying. On this record, therefore, the Court cannot find that a jury necessarily would have concluded that Petitioner used—actively employed, brandished, displayed, fired, or attempted to fire—the firearm.

### C. *Petitioner Cannot Be Convicted for "Carrying" a Firearm.*

■ In its Supplemental Response, the Government asserts that the Court should deny Petitioner's Motion to Vacate because a properly instructed jury under post-*Bailey* standards is one that would have been given an instruction on both "use" and "carry." Petitioner counters that this argument is untenable because he was only indicted for using a firearm and that the Court's instructions to the jury only reflected a use charge.

The Government relies on *United States v. Taylor,* 102 F.3d 767 (6th Cir.1996), for the proposition that the Court should deny Petitioner's Motion to Vacate because, even

though he may not have used a firearm, he certainly carried one, and a properly instructed jury would have received both a use instruction and a charge instruction. In *Taylor*, however, unlike the instant matter, the defendants were indicted for both using and carrying a firearm and the jury was instructed as such. *Taylor*, 102 F.3d at 768–70. Similarly, the other cases that the Government relies on, *Sherrod v. United States of America*, Report and Recommendation, No. 96–CV–75645–DT; *Williams v. United States*, 98 F.3d 1052, 1055 (8th Cir.1996); *United States v. Rodger*, 100 F.3d 90, 91 (8th Cir.1996); *Rivera v. United States*, 1996 WL 684222, *2 (S.D.N.Y.1996); *McGee v. United States*, 943 F.Supp. 671, 674–76 (W.D.La. 1996); *United States v. Perkins*, 939 F.Supp. 42, 44 (D.D.C.1996); *United States v. Crawford*, 932 F.Supp. 748, 752 (E.D.Va.1996); *United States v. Flores*, 1996 WL 32505, *1–2 (E.D.La.1996), all involve defendants and/or petitioners who were indicted with both using and carrying a firearm and juries that were instructed on both prongs. This is simply not the case in the instant matter because Petitioner was only indicted for using a firearm and the Court only instructed on use.[2]

In fact, this exact situation has been examined by other courts who have uniformly found that a use conviction cannot be upheld on the carrying prong when the defendant/petitioner was not indicted on it and when the court did not instruct on it. In *United States v. Golden*, 102 F.3d 936 (7th Cir.1996), the Seventh Circuit stated:

In this case, because [Defendant] was not charged with "carrying" a firearm, we cannot [remand the case for re-trial on the theory that Defendant "carried" the firearm.] The Tenth Circuit faced these unusual circumstances in *United States v. Wacker*, 72 F.3d 1453, 1464–65, n. 8 (10th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996). In *Wacker*, the court reversed some defendants' firearm convictions because no *Bailey* active-employment "use" could be found. The

court, however, could not remand those counts for consideration of whether the defendants could nonetheless be liable for "carrying" a firearm under § 924(c) because, as in this case, the defendants were not charged under the "carry" prong. *Id.* So, we reverse the § 924(c) conviction because of the absence of *Bailey* active-employment "use," but we do not remand for consideration of whether [Defendant] can be liable under the "carry" prong of § 924(c). Although this may be a "windfall" for Defendant ... "it is the established price of what our justice system is willing to pay for a greater measure of certainty that a defendant was not unlawfully convicted." *United States v. Robinson*, 96 F.3d [246,] 251 [ (7th Cir.1996) ].

Moreover, in the § 2255 context, the same result was reached in *Alicea v. United States*, 931 F.Supp. 111, 113 (D.Puerto Rico 1996), where the District Court stated:

[Petitioner] was charged with "using" the firearm, not with "carrying" the firearm under the provisions of 18 U.S.C. § 924(c)(1) ... Further, the instruction utilized to advise jurors of the elements of § 924(c)(1) also focused on the "use" prong ... Thus, regardless of what a rational jury could have decided at the time, petitioner was tried on a charge of "use" of the weapon and we cannot now convict him on a provision that was not part of the indictment. Accordingly, [Petitioner's] conviction under 18 U.S.C. § 924(c)(1) cannot at this stage be upheld under the "carrying" prong of the statute.

Undaunted, the Government observes that in *Fountain v. United States*, 953 F.Supp. 836 (E.D.Mich.1996), this Court held that although the petitioner there was not indicted with carrying a firearm, it would still consider upholding his use conviction on the basis of his carrying a firearm because the Court had instructed the jury on both use and carry and the citation to § 924(c) in the indictment gave the petitioner sufficient no-

---

**2.** Moreover, under the Sixth Circuit's recent decisions in *Moore, supra,* 76 F.3d 111, and *Riascos–Suarez, supra,* 73 F.3d 616, the Court's "use" instruction is inadequate even for a post-*Bailey* carrying charge because the Court instructed the

jury on the possession element, but not on the physical transportation element which *Moore* and *Riascos–Suarez* require. *Moore,* 76 F.3d at 113.

tice of his potential liability for carrying a firearm for the purposes of due process and double jeopardy. 953 F.Supp. at 842. *Fountain,* though, is distinguishable from the instant matter because here the Court never instructed the jury on carry.

The Government contends that this distinction is not important because a properly instructed jury under *Bailey* would be given both a use and a carry instruction. However, the courts that have considered what a "properly instructed jury" would have done have limited their "properly instructed" inquiry to the elements upon which the court actually instructed. No court has taken the additional step of first adding additional elements to the jury instruction and then considering what verdict a jury would have returned had they been properly instructed on the new elements. The Court finds that this limitation is wise because the proofs at trial, the arguments of counsel, and the Court's instructions did not frame Petitioner's conduct for the jury in terms of carrying a firearm. As a result, the Court finds it speculative and unduly prejudicial to contemplate what the jury would have done when properly charged with an element of crime upon which Petitioner was never indicted and on which the Court never instructed. Thus, having found that a jury would not necessarily have concluded that Petitioner used a firearm and that it cannot consider Petitioner's liability on the carrying prong, the Court must vacate Petitioner's § 924(c)(1) conviction.

Nevertheless, as it was in *Fountain,* the Court is compelled to observe that the *Bailey* decision and its progeny have created a disturbing gap in the law:

> [T]he narrow construction that the Supreme Court and appellate courts have given the terms "uses" and "carries" . . . [means that] people who "use" or "carry," as the terms are colloquially understood, weapons in relation to drug trafficking crimes may escape criminal prosecution and conviction. For example, people who, during drug deals, "use" a weapon to embolden themselves or to provide security may escape criminal liability for these acts so long as they keep quiet about the weap-

on, keep it hidden, keep it stationary, and keep it out of arms reach.

*Fountain,* 953 F.Supp. at 845. Therefore, given the result in this case, the Court reiterates again that "it is the responsibility of Congress . . . to change this law to reflect the realities of drugs and violence in America today." *Id.*

### D. *Re–Sentencing Petitioner under a Two–Level Enhancement Pursuant to U.S.S.G. § 2D1.1(b)(1).*

At the hearing on this matter, the Government indicated that if the Court vacated Petitioner's § 924(c)(1) conviction, it would request that the Court re-sentence Petitioner under the two point enhancement in the United States Sentencing Guidelines ("USSG"). Specifically, at § 2D1.1(b)(1) the USSG provide for a two-level increase in Petitioner's base offense level for a conviction involving drugs "if a dangerous weapon [including a firearm] was possessed. . . ." When Petitioner was convicted, this two-level increase could not be applied because the alleged use of the firearm also served as the basis for the § 924(c)(1) conviction. In particular, the two-level increase, if applied, would have impermissibly "double counted" the use of the firearm. *United States v. Clements,* 86 F.3d 599, 601 (6th Cir.1996). Thus, now that the Court has vacated the § 924(c)(1) conviction and the Government has requested re-sentencing, the Court must consider the propriety of adjusting Petitioner's sentence to allow for the § 2D1.1(b)(1) enhancement.

The Sixth Circuit has held that after a § 924(c)(1) conviction is vacated on direct appeal pursuant to *Bailey,* it has the authority to remand a case to the District Court for re-sentencing on all interdependent counts because 28 U.S.C. § 2106 vests it with the supervisory power to vacate and remand an entire sentencing package. *Clements,* 86 F.3d at 600–01. Moreover, in *Thayer v. United States,* 937 F.Supp. 662, 665–67 (E.D.Mich.1996), this Court held that pursuant to § 2255 itself, a District Court has the authority to impose the two-level enhancement and re-sentence a petitioner who has

had a § 924(c) conviction vacated due to *Bailey*.

Section 2255 provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States ... may move the court which imposed the sentence to vacate, set aside, or correct the sentence ...

> If the court finds that the sentence imposed was not authorized by law or otherwise open to collateral attack ... the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255. Since *Thayer*, the Fourth Circuit and the Seventh Circuit have reached the same result and have relied upon the same reasoning. *See, United States v. Hillary*, 106 F.3d 1170, 1171–72 (4th Cir.1997); *United States v. Smith*, 103 F.3d 531, 533–35 (7th Cir.1997). Thus, relying upon the plain language of § 2255, the Court will re-sentence Petitioner and impose the two-level enhancement under U.S.S.G. § 2D1.1(b)(1).

## IV. *CONCLUSION*

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED Petitioner's Motion to Vacate is GRANTED; and

IT IS FURTHER ORDERED that re-sentencing is scheduled for 6–2, 1997 at 10:00 a.m.