Russell D. WOODHOUSE, Petitioner,

v.

UNITED STATES of America,
Respondent.

Civil No. 96–3040.
Criminal No. 90–30039.

United States District Court,
C.D. Illinois,
Springfield Division.

July 26, 1996.

David B. Mote, Asst. Fed. Pub. Defender, Springfield, IL, for petitioner.

Timothy A. Bass, Asst. U.S. Attorney, Springfield, IL, for respondent.

### OPINION

RICHARD MILLS, District Judge:

In the wake of *Bailey,* the Government wants to resentence. Resentence it must be.

### I. Background

On August 23, 1990, Petitioner Russell Woodhouse was indicted for: count I—conspiring to distribute LSD, 21 U.S.C. § 841(a)(1) and § 846; count II—distributing LSD, 21 U.S.C. § 841(a)(1); and count III—using a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1).

On December 4, 1990, Woodhouse pleaded guilty to counts I (conspiring to distribute LSD) and III (using a firearm during and in relation to a drug trafficking crime). Woodhouse was sentenced to a term of imprisonment of 127 months—67 months on count I and 60 months on count III to run consecutive to count I.[1] Woodhouse appealed, but

---

1. Under the Sentencing Guidelines, Woodhouse had a criminal history category of I and a total offense level of 32, resulting in a guideline imprisonment range of 121 to 151 months as to the conspiracy to distribute LSD conviction. The § 924(c)(1) conviction resulted in a mandatory *consecutive* 60 month sentence.

Thus, Woodhouse faced a minimum imprisonment period of 181 months—121 months on the conspiracy to distribute LSD conviction plus 60 consecutive months on the § 924(c)(1) conviction.

At the sentencing hearing, however, the Government made a motion to downward depart

the appeal was subsequently dismissed on Woodhouse's motion.

On February 15, 1996, Woodhouse filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. He claimed that his conviction under § 924(c)(1) for *using* a firearm during a drug trafficking crime is inconsistent with the Supreme Court's recent decision in *Bailey v. United States, —— U.S. ——*, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Assuming *Bailey* applied retroactively to a § 2255 motion, the Court agreed with Woodhouse's position.[2] *See* Court Order of February 16, 1996. The Court directed the Government to respond. In response, the Government conceded Woodhouse's position. Accordingly, on February 26, 1996, the Court entered an order vacating Woodhouse's § 924(c)(1) conviction.

Now, the problems started.

In the Government's response, it conceded Woodhouse's position regarding *Bailey* 's invalidation of the § 924(c)(1) conviction, but, it also asked the Court to *resentence* Woodhouse on the remaining count—conspiracy to distribute LSD. The Government seeks to add 2 levels to Woodhouse's total offense level pursuant to U.S.S.G. § 2D1.1(b)(1) for possessing a dangerous weapon—a firearm—in connection with the conspiracy to distribute LSD conviction.

The 2 level enhancement was not available to the Government at the time of the original sentencing. That is, when one is convicted of violating § 924(c)(1) in addition to the predicate drug trafficking offense, the Sentencing Guidelines do not permit a § 2D1.1(b)(1) enhancement to the offense level associated with the drug trafficking offense. The rationale is that because the defendant is already being punished—by way of a mandatory 60 month sentence to run *consecutive* to the sentence imposed on the predicate drug trafficking offense—under § 924(c)(1) for *using or carrying* the firearm, the Sentencing

Guidelines view a § 2D1.1(b)(1) enhancement for *possessing* a firearm as an unwarranted double counting, *i.e.,* the defendant would be punished twice—once under § 924(c)(1) and once under § 2D1.1(b)(1)—due to the firearm's connection with the underlying drug trafficking offense. *See* § 2K2.4, Commentary, Background; § 3D1.1, Commentary, Application Note 1.

Accordingly, since Woodhouse's § 924(c)(1) is invalid as a result of the *Bailey* decision, the § 924(c)(1) conviction no longer bars the application of the § 2D1.1(b)(1) enhancement. Thus, the Government wants Woodhouse resentenced to increase his base offense level for the conspiracy to distribute LSD conviction by 2 levels under § 2D1.1(b)(1)—which, of course, would increase the guideline imprisonment range for that offense. That, of course, would have been the result had Woodhouse never been convicted of the § 924(c)(1) charge at the time of the original sentencing.[3]

The Court was initially skeptical as to whether the Government could resentence a successful § 2255 petitioner on a valid conviction—the conspiracy to distribute LSD conviction—which went unchallenged in the § 2255 motion. So, in the order allowing Woodhouse's § 2255 motion and vacating the § 924(c)(1) conviction, the Court appointed counsel for Woodhouse and set a schedule for the parties to brief the resentencing issue.

Something interesting happened shortly thereafter, which, as will be seen, adds a subtle wrinkle to the Court's analysis. To review, Woodhouse originally received a total sentence of 127 months of imprisonment—67 months were allocated to the conspiracy to distribute LSD conviction and 60 months were allocated to the § 924(c)(1) conviction. The moment the Court allowed the § 2255 motion and amended the judgment to reflect the vacated § 924(c)(1) conviction, technically, Woodhouse had a *total* sentence of 67

under § 5K1.1 based on Woodhouse's "substantial assistance." The Court granted the Government's motion and departed downward from 121 months—the low end of the applicable range—to 67 months of imprisonment regarding the conspiracy to distribute LSD conviction.

2. The Government informed the Court that its national policy is to concede the retroactive application of *Bailey.*

3. Assuming the Court can resentence him, Woodhouse does not dispute that he qualifies for the § 2D1.1(b)(1) enhancement.

months of imprisonment—the amount of imprisonment time allocated to the conspiracy to distribute LSD conviction. After subtracting Woodhouse's credit for "good time," he had served more than 67 months in prison at the time of the Court's order. Thus, technically, he had completed his imprisonment period for the conspiracy to distribute LSD conviction.

Because his imprisonment period was now completed, the Bureau of Prisons notified the Government that it had to release Woodhouse. The Government immediately filed a motion to stay the sentence until the resentencing issue was resolved. The Court scheduled an emergency telephone conference with the Government and the Federal Public Defender's Office—Woodhouse's appointed counsel. At the time of the telephone conference, however, the Court was informed that the Bureau of Prisons had just released Woodhouse. The Government agreed not to seek to arrest Woodhouse pending the resolution of the resentencing issue, thus, the Government's motion to stay the sentence was moot.

Woodhouse has been out of jail since early March 1996.

## II. Discussion

Woodhouse's resentencing presents at least three significant issues: (1) Does the Court have jurisdiction to resentence Woodhouse?; (2) Would Woodhouse's resentencing violate the Fifth Amendment's Double Jeopardy Clause?; and (3) Would placing Woodhouse back in jail violate the Due Process Clause?

As more thoroughly discussed below, the Court concludes that it has jurisdiction to resentence Woodhouse, the resentencing does not violate the Double Jeopardy Clause, and requiring Woodhouse to report back to prison does not violate the Due Process Clause.[4] The Court will address each issue in turn.

### A. Jurisdiction

The argument that the Court lacks jurisdiction to resentence Woodhouse goes something like this: Woodhouse's § 2255 motion attacked *only* his § 924(c)(1) conviction, it did *not* attack the drug trafficking conspiracy conviction; thus, since Woodhouse did not put his drug conviction on the table, the Court has no jurisdiction to increase the part of the sentence associated with that conviction. Or, in other words, the Court has jurisdiction over *only* the part of the sentence that is associated with the conviction attacked in the § 2255 motion—the § 924(c)(1) conviction which produced a 60 month consecutive sentence. Thus, the argument goes, the Court can only chop off the 60 month consecutive sentence.

The Court disagrees.

■ To begin, Woodhouse's argument is contradicted by the plain-language of § 2255. When a district court finds that the collateral attack is meritorious, § 2255 first directs the court to "vacate and set the judgment aside." The Court did that here—the Court vacated the § 924(c)(1) conviction and set the "judgment" aside.[5] Next, § 2255 authorizes four

---

4. No circuit court has considered these issues yet. Numerous district courts have, however. It appears that the district courts are evenly split on the various issues surrounding the resentencing of a successful *Bailey* petitioner. This Court agrees with much of the reasoning of *Pedretti v. United States*, No. 96–CV–0146, 1996 WL 340769 (N.D.N.Y. April 26, 1996); *Mixon v. United States*, 926 F.Supp. 178 (S.D.Ala.1996); *Merritt v. United States*, 930 F.Supp. 1109 (E.D.N.C. 1996), and disagrees with much of the reasoning of *Warner v. United States*, 926 F.Supp. 1387 (E.D.Ark.1996); *Rodriguez v. United States*, 933 F.Supp. 279 (S.D.N.Y.1996); *Dossett v. United States*, 931 F.Supp. 686 (D.S.D.1996).

5. What the word "judgment" means is debatable. By setting the "judgment" aside, is the statute

referring to the conviction at issue or the actual "judgment in a criminal case," which is the "official" document that places the defendant in the custody of the Bureau of Prisons for the specified term of imprisonment? *See Davis v. United States*, 417 U.S. 333, 350–368 & n. 13, 94 S.Ct. 2298, 2307–2315 & n. 13, 41 L.Ed.2d 109 (1974) (Rehnquist, J., dissenting) (discussing the confusing language of § 2255). Does it matter? Perhaps. If the term "judgment" is referring to the official paper document that places the defendant in the custody of the Bureau of Prisons, the Court believes such an interpretation lends support to the Court's holding that it may resentence Woodhouse on the unchallenged conviction. But, even if "judgment" refers to only the conviction at issue, the plain-language of the statute appears to still permit the court to "resen-

types of relief available to the successful litigant depending upon the circumstances: the court "*shall* [1] discharge the prisoner or [2] resentence him or [3] grant a new trial or [4] correct the sentence as may appear appropriate." Based on the circumstances of the instant case, the Court concludes that it must resentence Woodhouse or correct the sentence as may appear appropriate to effectuate a sentence consistent with the Sentencing Guidelines.[6] *See United States v. Garcia,* 956 F.2d 41, 45 (4th Cir.1992) ("The § 2255 remedy is broad and flexible and entrusts to the courts the power to fashion an appropriate remedy.").

One could argue that the four types of relief available to a successful § 2255 petitioner are limited to *only* the conviction under attack—here, the § 924(c)(1) conviction. That is, with respect to the § 924(c)(1) conviction only, the Court "*shall*" (1) discharge the prisoner, (2) resentence him, (3) grant a new trial, or (4) correct the sentence as may appear appropriate. The Court has a few problems with that interpretation.

■ First, nothing in § 2255 suggests that it should be interpreted in such a restrictive manner. Rather, it appears that the relief available is broad and flexible.

Second, such an interpretation leads to another interesting problem. If the available forms of relief are limited to solely the conviction under attack, what option does the Court have with respect to the vacatur of Woodhouse's § 924(c)(1) conviction? In other words, because the successful *Bailey* petitioner could still be serving the part of the

sentence associated with the predicate drug offense, certainly the Court could not discharge the prisoner—option number one. And, because—as a result of the *Bailey* decision—the petitioner did not violate § 924(c)(1), there is no conviction under § 924(c)(1) for the Court to conduct a resentencing, nor would there be a § 924(c)(1) sentence for the Court to correct as may appear appropriate—options number 2 and 4. Similarly, the petitioner did not commit an offense in violation of § 924(c)(1), the Court cannot obviously grant a new trial on the § 924(c)(1) charge—option number 3. In conclusion, if the available forms of relief are limited to solely the conviction under attack in the § 2255 motion, there does not appear to be a statutorily authorized form of relief available for the Court to grant in the instant situation—thus, what is the Court to do?

■ More importantly, however, the Court finds that interpreting § 2255 narrowly to permit relief with respect only to the conviction under attack violates the well-recognized principle—which is consistent with the broad relief available based on a plain-language interpretation of § 2255—that a multi-count conviction produces a sentencing package, not independent separate sentences on each count of conviction. *See Pedretti v. United States,* No. 96–CV–0146, 1996 WL 340769 (N.D.N.Y. April 26, 1996) (holding that the district court inherently has the jurisdiction to resentence a successful § 2255 petitioner when the vacatur of a count frustrates the interdependent original sentencing package).[7] The U.S. Court of Appeals for

---

tence" the successful § 2255 petitioner. And, as will be discussed, the statute does not place limitations on the scope of the resentencing.

**6.** Whether the Court is technically "resentencing" Woodhouse or "correcting his sentence as may appear appropriate" is debatable. The Court will refer to its actions throughout this order as a "resentencing."

**7.** The *Pedretti* court cites *McClain v. United States,* 676 F.2d 915 (2nd Cir.1982), *cert. denied,* 459 U.S. 879, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982), in support of its holding. *McClain* is the most analogous case regarding the instant resentencing issue that the Court could locate.

After the Supreme Court held that a defendant could not be punished under both 18 U.S.C.

§ 2113(d) and § 924(c), the defendant in *McClain* filed a § 2255 motion to vacate his § 924(c) conviction. The defendant was originally sentenced to a total term of imprisonment of 25 years—15 years were allocated to the § 2113(d) conviction and 10 years to the § 924(c) conviction. The district court, following a reversal of its ruling that the Supreme Court's decision did not apply retroactively to the petitioner's § 2255 motion, vacated the § 924(c) conviction along with the *entire* sentence and, essentially, started over. The district court ultimately resentenced the petitioner to a term of imprisonment of 20 years on the § 2113(d) conviction. The Second Circuit rejected the petitioner's argument that the district court did not have the authority to vacate the sentence allocat-

the First Circuit eloquently explained the sentencing package principle as follows:

> [W]hen a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan. When a conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal.

*United States v. Pimienta–Redondo*, 874 F.2d 9, 14 (1st Cir.1989), *cert. denied*, 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989); *accord, United States v. Shue*, 825 F.2d 1111, 1115 (7th Cir.1987), *cert. denied*, 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987).[8]

 There is no doubt in the mind of this judge that Woodhouse's total sentence was based on a sentencing package scheme. In fact, it is the opinion of this Court that, due to the application of the Sentencing Guidelines, *every* aggregate sentence which

is based on a drug conviction—such that § 2D1.1 of the Guidelines applies—*and* a § 924(c)(1) conviction produces a sentencing package for the two convictions.[9] Indeed, the guideline imprisonment range for the drug conviction in this case was *entirely* dependent upon the § 924(c)(1) conviction. *See United States v. Clements*, 86 F.3d 599, 601 (6th Cir.1996) ("We conclude that defendant's sentences for his [drug conviction and § 924(c) conviction] were interdependent.").

As discussed previously, regarding the drug conviction, Woodhouse had a total offense level of 32 and a criminal history category of I, resulting in a guideline imprisonment range of 121 to 151 months. *See* Footnote 1, *supra*. But for the § 924(c)(1) conviction—which, of course, prevented the 2 level enhancement for possessing a dangerous weapon under § 2D1.1(b)(1)—Woodhouse's total offense level would have increased to 34, producing a guideline imprisonment range of 151 to 188 months on the drug conviction. Thus, the fact that the applicability of the § 2D1.1(b)(1) enhancement to the drug conviction is totally dependent upon whether the defendant is also convicted under § 924(c)(1) inherently produced a sentencing package,[10] *i.e.*, the Sentencing Guide-

---

ed to the unchallenged conviction—the § 2113(d) conviction.

**8.** The sentencing package discussion in both of the cited cases involved reversals and remands on direct appeal. Whether a sentence is a package is determined at the time of sentencing, however; the manner by which a single count of a multi-count conviction is vacated—whether by direct appeal or § 2255 motion—has no impact on whether a sentence is a package. Thus, the Court sees no reason why the sentencing package principle cannot be observed when a § 2255 motion is the method of vacatur. Indeed, the sentencing package principle appears to be entirely consistent with the plain-language of § 2255.

Both of the cited cases also concern sentencings that did not involve the application of the Sentencing Guidelines. As will be discussed, although the Sentencing Guidelines have eliminated much of the district court's discretion at sentencing, they have not necessarily altered the sentencing package principle when multi-count convictions are at issue. Rather, the method by which the package is created is altered. With the advent of the guidelines, the judge—in many

cases—is no longer the architect of the sentencing package; instead, the Sentencing Guidelines provide the blueprint for the sentencing package in place of the judge.

**9.** The Court's discussion presumes that the defendant is not considered a career offender or an armed career criminal. In those cases, the increase in the base offense level due to the application of the career offender or armed career criminal provisions will likely be greater than the § 2D1.1 base offense level irrespective of whether the § 2D1.1(b)(1) enhancement for possessing a dangerous weapon is applicable.

**10.** The Court is not concluding that every multi-count conviction produces a sentencing package. Due to the formalistic method of the Sentencing Guidelines which eliminated much of the district court's discretion, in many instances it may not be necessary to resentence a defendant after a successful attack on one count of a multi-count conviction. *See United States v. Severson*, 3 F.3d 1005, 1013 (7th Cir.1993). But here, due to the interdependency of the sentences of the two convictions, this is not one of those cases. *See* footnote 8, *supra*.

lines necessarily constructed the sentencing package—or, at least, the basic framework of the sentencing package.[11]

■ Furthermore, at the sentencing hearing, the Government made a motion under § 5K1.1 for a downward departure based on Woodhouse's "substantial assistance." The Court allowed the motion and downward departed with respect to the drug conviction from an imprisonment range of 121 to 151 months to 67 months. When this judge downward departs, one of the primary factors considered in determining the amount of the departure is the *total* amount of time of incarceration. But for § 924(c)(1)'s mandatory 60 month consecutive sentence, the Court would not have allowed such a beneficial downward departure.[12]

In summary, the Court finds that it has jurisdiction to resentence Woodhouse based on the plain-language of § 2255 and, alternatively, on the Court's inherent authority to correct an unbundled sentencing package when a count of a multi-count conviction is properly vacated. Through the application of the Sentencing Guidelines—which included the inapplicability of § 2D1.1(b)(1) and the applicability of § 5K1.1—Woodhouse's total sentence of 127 months—67 months on the drug conviction followed by the § 924(c)(1) consecutive 60 month sentence—was clearly based on a sentencing package scheme. The vacatur of the § 924(c)(1) conviction unbundled that package.

### B. Double Jeopardy

■ Both parties agree that the resolution of whether resentencing on the drug conviction would violate the Double Jeopardy Clause focuses on whether Woodhouse had a reasonable expectation of finality in the sentence allocated to the drug conviction. *See United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). Woodhouse argues that because he fully satisfied the 67 month term of imprisonment allocated to the drug conviction, his expectation of finality in that sentence crystallized.

The Court disagrees.

■ Woodhouse's position is based on the premise that he received separate and distinct sentences on the drug count and the § 924(c)(1) count. As discussed, however, the Court rejects such reasoning. Woodhouse received *one* aggregate sentence, a sentencing package which included imprisonment time allocated to both the drug count and the § 924(c)(1) count. Thus, when Woodhouse filed the § 2255 motion attacking the validity of the § 924(c)(1) conviction, he also necessarily attacked the Court's sentencing package. By attacking the sentencing package, he does not have a reasonable expectation in the finality of any portion of the sentencing package. Indeed, by filing the § 2255 motion, he put his entire sentence at issue again.

**11.** As discussed in footnote 7, *supra.*, the *Pedretti* court—which sits within the Second Circuit—concluded that district courts have the inherent authority to resentence a successful § 2255 petitioner on unchallenged counts based on the sentencing package principle. *Pedretti* cited the Second Circuit's decision in *McClain* for support.

In *Rodriguez v. United States*, 933 F.Supp. 279 (S.D.N.Y.1996), the district court—which also sits within the Second Circuit—noted that *McClain* could be read to support the *Pedretti* court's conclusion. The *Rodriguez* court, however, declined to follow such reasoning, concluding that the *McClain* reasoning applied only if the district court engaged in a sentencing package scheme. And, because the *Rodriguez* court concluded that it "did not manipulate the individual sentences in order to arrive at an overall sentencing plan," *McClain* was determined to be distinguishable.

Although the *Rodriguez* court may not have technically manipulated the sentences, it is the opinion of this Court that the Sentencing Guide-

lines—which were of course designed to eliminate much of the district court's discretion—were the culprit, *i.e.*, they manipulated the sentences instead of the judge to achieve a sentencing package. Indeed, as discussed, but for the § 924(c)(1) conviction, the Sentencing Guidelines—through application of the § 2D1.1(b)(1) enhancement—would have produced a greater sentencing range with respect to the drug conviction. Thus, the Sentencing Guidelines constructed a sentencing package for the two convictions.

**12.** The Court's discussion in footnotes 8 and 10, *supra.*, presumed that a § 5K1.1 downward departure was *not* at issue. If a § 5K1.1 downward departure is allowed at sentencing in *any* type of multi-count conviction case—irrespective of the precise application of the guidelines—the resulting aggregate sentence looks much more like a pre-guideline sentencing package.

## C. Due Process

Neither party addressed this issue, but the Court speculates that because Woodhouse was released from prison, at some point in time it may be fundamentally unfair to require him to report back to prison. The Court could not locate analogous case law, but the Court does not believe that—under the facts of the instant case—the Due Process Clause would be violated by requiring Woodhouse to report back to prison after a five-month "hiatus." Keep in mind, since his release, the Court has retained jurisdiction over Woodhouse based on his supervised release status.

## III. Conclusion

To summarize, the Court finds that it has the jurisdiction to resentence Woodhouse on the sole remaining count of conviction, no Double Jeopardy violation will ensue as a result of the resentencing, nor will a Due Process violation result.

The Court does not find it necessary to prepare a new Presentence Investigation Report. The Court will merely increase the total offense level for the drug conviction by 2 levels to 34 pursuant to § 2D1.1(b)(1). An offense level of 34 and a criminal history category of I produces a guideline imprisonment range of 151 to 181 months.

The parties may argue their respective positions regarding the amount of the § 5K1.1 downward departure at the resentencing hearing.

The resentencing hearing is set for August 12, 1996, at 11:00 a.m.

*Ergo,* the Government's request for resentencing is ALLOWED.