Joe Willie FOUNTAIN, Petitioner,

v.

UNITED STATES of America,
Respondent.

Civ. No. 96–CV–72532.
Crim. No. 91–CR–80471–1.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 13, 1996.

Penny Beardsley, Detroit, MI, for Petitioner.

Michael Carithers, Detroit, MI, for Respondent.

*ORDER DENYING PETITIONER'S MO-TION FOR BOND, GRANTING PETI-TIONER'S MOTION TO VACATE AND DENYING THE GOVERN-MENT'S REQUEST FOR RE–SEN-TENCING*

ROSEN, District Judge.

## I.  INTRODUCTION

### A.  *The Matter in Front of the Court.*

This case is presently before the Court on Petitioner Joe Willie Fountain's 28 U.S.C. § 2255 Motion to Vacate his sentence under 18 U.S.C. § 924(c)[1]. Petitioner went to trial and was convicted[2] before this Court on Counts 2 through 5 of his January 16, 1992 Superseding Indictment. These counts were as follows, Count 2: possessing crack cocaine with the intent to distribute it within 1,000 feet of a school on or about May 8, 1991; Count 3: using or carrying firearms in connection with drug trafficking on or about May 8, 1991; Count 4: destroying property to prevent seizure on or about May 8, 1991; and Count 5: possessing crack cocaine with the intent to distribute it within 1,000 feet of a school on or about June 4, 1991. In his Motion to Vacate, Petitioner challenges his conviction on Count 3 pursuant to the recent decision in *Bailey v. U.S.*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

### B.  *The Bailey Decision and Its Effect.*

The *Bailey* Court examined "whether evidence of the proximity and accessibility of a firearm to drugs or drug proceeds is alone sufficient to support a conviction for 'use' of a firearm during and in relation to a drug

---

1. The statute provides in pertinent part that: Whoever, during and in relation to any drug trafficking crime, for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall be guilty of an offense against the United States.

18 U.S.C. § 924(c).

2. Petitioner's trial began on January 27, 1992 and concluded on January 29, 1992 with the jury returning a guilty verdict.

trafficking offense....." —— U.S. at ——, 116 S.Ct. at 503. In *Bailey,* pursuant to a consolidated action, the appellants challenged § 924(c) convictions where the weapons were, in one case, locked in a car trunk, and in the other, locked in a footlocker inside a closet. When it decided these challenges, the Court adopted a definition of "use" of a firearm in the § 924(c) context that was significantly narrower than that which courts had been applying. Specifically, the Court held, in a unanimous decision, that "use" means "active employment," such as "brandishing, displaying, bartering, striking with ... firing or attempting to fire" a firearm or making a calculated reference thereto." *Id.* at ——, 116 S.Ct. at 508. Under this definition, "[s]toring a gun near drugs or drug proceeds or secreting one for possible future employment does not constitute 'use,'" as courts had previously held and instructed juries upon pursuant to the so-called "Fortress Theory." *United States v. Moore,* 76 F.3d 111, 112 (6th Cir.1996).

Because of the *Bailey* decision, courts have been faced with a plethora of motions to vacate § 924(c) convictions and have re-examined their § 924(c) jurisprudence under both the "uses" and "carries" prongs. In one such case, *United States v. Riascos–Suarez,* 73 F.3d 616 (6th Cir.1996), the Sixth Circuit re-formulated its approach to the "carries" prong. Here, the Sixth Circuit noted that although *Bailey* was limited to the definition of "use," it also provided guidance regarding "carrying." In particular, the *Riascos–Suarez* Court noted that when the *Bailey* Court distinguished "uses" from "carries," it stated the following:

> If Congress had intended to deprive "use" of its active connotations, it could have simply substituted a more appropriate term—"possession"—to cover the conduct it wished to reach.... A defendant cannot be charged under section 924(c)(1) merely for storing a weapon near drugs or drug proceeds. Storage of a firearm without its more active employment, is not reasonably distinguishable from possession.

*Riascos–Suarez,* 73 F.3d at 623 (quoting *Bailey,* —— U.S. at ——, 116 S.Ct. at 508).

Relying on this language, the Sixth Circuit determined that "[s]ince neither storage nor possession of a gun is, without more, prohibited by section 924(c)(1), to be convicted under section 924(c)(1) of 'carrying' a weapon, a defendant must do more than possess or store a weapon ... the firearm must be immediately available for use—on the defendant or within his or her reach." *Id.*

More recently, in *Moore,* 76 F.3d 111, the Sixth Circuit further explained the "carries" term and held that:

> [I]f Congress had meant section 924(c)(1) to implicate any individual who happens to be within arm's reach of a firearm, surely it would have selected a more accurate term than "carry." A definition of "carry" that takes only availability into account ignores the term's most obvious connotation, i.e., physical transportation. Immediate availability is therefore a necessary, but not sufficient, determinant.

*76 F.3d at 113 (citations omitted). The *Moore* Court noted that this now required physical transportation element was implicit in its *Riascos–Suarez* decision because in that decision, the firearm at issue was immediately available and physically transported since the police found it protruding from the driver's side console near drug paraphernalia and proceeds in a car which the appellant was driving when the police pulled him over. *Id.*

Informed by this precedent, and as explained below, the Court finds that it must grant Petitioner's Motion to Vacate. However, since the Court could not reach this decision until thoroughly analyzing the facts and the law applicable to this case, the Court denied Petitioner's Motion for Bond at the hearing held in this matter. Finally, because Petitioner has served more time than he would even if the Court re-sentenced him, the Court denies the Government's request for re-sentencing which the Government conceded as moot at the hearing.

## II. *FACTUAL BACKGROUND*

On May 8, 1991 and June 4, 1991, agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF") executed a search warrant at Petitioner's residence, 14272 Mayfield Detroit,

Michigan. (Trial Transcript 1/27/91, Gunthrie at pp. 6–7). Since the evidence obtained and the conviction resulting from the June 4, 1991 search are not in issue, Petitioner addresses only the May 8, 1991 search in his Motion to Vacate and for Bond.

During execution of the May 8, 1991 search warrant, the ATF agents recovered two firearms, one rock of cocaine base from the bath tub, and one rock of cocaine base in the possession of another individual. (Trial Transcript 1/27/91, Gunthrie at p. 13; Trial Transcript 1/28/91, Primak at p. 98). One firearm, a Commando 45 .45 caliber rifle, was found partially under the bed in Petitioner's bedroom and the other, a Fabrique D'Armes .22 semi-automatic pistol[3], was found on a closet shelf in that same bedroom. (Trial Transcript 1/27/91, Gunthrie at p. 18; Trial Transcript 1/28/91, Yott at p. 34 and Primak at pp. 85–87).

Petitioner's live-in girlfriend, Ms. Selma Hill, testified that she had lived at the Mayfield address for five months, (Trial Transcript 1/28/91, Hill at pp. 13–14), and that she had used crack between June 1, 1991 and August 6, 1991. (*Id.* at p. 13, p. 17). With respect to Petitioner, Ms. Hill stated that he usually kept the Commando rifle next to him in the living room during his drug transactions so that "if [the drug customers] try to start an argument with Joe, because they're short of money, he would just show [the rifle] to them if they want to leave the house." (*Id.* at p. 15).

Ms. Hill further testified that she saw Petitioner engage in drug transactions sometime in May 1991 and possibly on May 8, 1991, although she could not recall any precise incident or date in May. (*Id.* at p. 22). With respect to June 4, 1991, she stated that on this day she did not see Petitioner make any crack sales or handle any guns. However, between May 8 and June 4, Ms. Hill testified that Petitioner made approximately 10 crack sales.

On May 8, 1991, the day that the ATF agents executed the search warrant, Ms. Hill

stated that while Petitioner was in the living room, she was alone in the bedroom, where the ATF agents later discovered the Commando rifle partially sticking out from underneath the bed. (*Id.* at p. 23). When the ATF agents entered the house, Ms. Hill testified that she left the bedroom and went toward the front part of the house where she saw Petitioner running towards the kitchen. The ATF agents, however, testified that, when they entered the house, they observed Petitioner coming out of the bedroom and entering the bathroom in an attempt to destroy the drug evidence. The ATF agents also found four other individuals inside the house.

### III. *PROCEDURAL HISTORY*

On January 29, 1992, a jury found Petitioner guilty of Counts 2 through 5 in the Superseding Indictment. On April 13, 1992, he was sentenced to serve 46 months each on Counts 2, 4, and 5, concurrently with each other. On Count 3, he was sentenced to serve 60 months consecutive to the sentence imposed on the other counts. Thus, his total sentence was 106 months. On August 9, 1993, the Sixth Circuit affirmed the convictions and the sentence.[4]

On February 15, 1996, Petitioner filed a Motion to Vacate his conviction and his 60 month sentence under Count 3 and for Bond pending resolution of the Motion.

### IV. *ARGUMENTS OF THE PARTIES*

Petitioner urges the Court to vacate his conviction under 18 U.S.C. § 924(c), Count 3, due to the *Bailey* decision. As discussed earlier, in *Bailey* the U.S. Supreme Court held that to prove a firearm was "used" within the meaning of § 924(c), the Government must show its "active employment." —— U.S. at ——, 116 S.Ct. at 508. This definition includes ". . . brandishing, displaying, bartering, striking with . . . or firing . . ."; but, it does not include merely placing or storing a firearm somewhere ". . . to provide a sense of security or to embol-

---

**3.** This weapon is not at issue with respect to Petitioner's conviction or his Motion to Vacate.

**4.** This decision, *United States v. Joe W. Fountain*, 2 F.3d 656 (6th Cir.1993), is discussed, *infra* in Sections V.C and V.D of this Opinion.

den...." *Id.* at ———–———, 116 S.Ct. at 508–09.

Relying upon *Bailey,* Petitioner argues that the jury instructions given during his trial for the terms "use" and "carry" under § 924(c) require *habeas* relief.[5] In this case, the jury was instructed that as to Count 3 under § 924(c):

> ... the word "carries" does not require that the [G]overnment prove actual possession, nor does the word "use" require the [G]overnment to prove that [Petitioner] brandished or displayed the firearm. Rather, it is sufficient to convict [Petitioner] if you find beyond a reasonable doubt that he had possession of a firearm or that he had a firearm under his control in any manner which facilitated his possession with the intent to distribute cocaine or cocaine base. Thus, if you find beyond a reasonable doubt that [Petitioner] had a weapon readily accessible to secure, enforce or protect the drug transaction, you can find him guilty ... [6]

(Trial Transcript, 01/29/92).

As to the "use" and "carry" elements under *Bailey* and *Moore,* Petitioner relies on his testimony at trial where he stated that although the rifle found in his bedroom under the bed was his, he did not use it in relation to a drug transaction on or about May 8, 1991. Furthermore, he also notes that at trial he testified that Ms. Hill's unsupported testimony, to the extent it was contrary, constituted an out-right lie. Additionally, he argues that because Ms. Hill was a narcotic addict, it was error for the Court not to instruct the jury that:

> If an informer is also a narcotic addict, there are additional reason (sic) why his/ her testimony should be considered with great care. An addict has a need for a supply for drugs and money to support his/her habit and also may have an abnormal fear of imprisonment in which his/her supply of drugs might be cut off. Now these are special circumstances which you may consider in weighting (sic) the testimony of this kind.

(Petitioner's Motion, p. 10).

Finally, Petitioner argues for bond pending resolution of these § 2255 proceedings. Having been in custody since June 4, 1991, Petitioner has served the 46 month concurrent sentences and is now well into the 60 month § 924(c) sentence. Thus, he would have been released from the 46 month sentences on October 5, 1994 if he had not been subject to the consecutive § 924(c) sentence. This calculation reflects jail credit and good times credit, which Bureau of Prisons records indicate Petitioner will receive.

Moreover, Petitioner notes that he would also have already been released even if the Court were to vacate the § 924(c) conviction and re-sentence him to allow for a two-point enhancement under § 2D1.1(b)(1) of the Sentencing Guidelines. The Guidelines range at sentencing was 33 to 41 months, based on an Adjusted Offense Level of 20 and the Criminal History Category I. With an additional two-points, the Adjusted Offense Level would be 22, and the Guidelines range would be 41 to 51 months. Even assuming the Court departed upward by five months and imposed a 56 month sentence, Petitioner would have already served excessive time, as he has served nearly 66 months.

However, Petitioner also argues that the Court does not have jurisdiction to re-sen-

---

5. Further, Petitioner claims that an additional jury instruction error was committed because the jury was also instructed that it could convict under § 924(c) if it found that "the defendant knowingly used or carried the firearm ... while committing such drug trafficking offense." This alleged instruction, according to Petitioner, is plain error because it omits the "in relation to" language of the statute which is an essential element of the crime that must appear in the jury instructions.

However, having reviewed the trial transcript, the Court finds that Petitioner's allegation here is erroneous, as the Court specifically included in its jury instruction the exact language of the statute, including the "in relation to" language. Thus, the Court will not address this argument.

6. This instruction, and others like it, are generically referred to as "Fortress Analogy" or "Fortress Theory" instructions. *See, e.g., U.S. v. Henry,* 878 F.2d 937, 944 (6th Cir.1989). These instructions were effectively overruled by *Bailey. See, e.g.,* —— U.S. at ——, 116 S.Ct. at 505; *United States v. Anderson,* 89 F.3d 1306 (6th Cir.1996); *United States v. Olds,* No. 94–6286, 1996 WL 557768 (6th Cir.1996) (unpublished).

tence in the § 2255 posture and that resentencing would violate due process and double jeopardy because he has completed the underlying sentences and served a substantial portion of the allegedly invalid 60 month § 924(c) sentence. Thus, Petitioner concludes that he should be released immediately on bond, pursuant to 18 U.S.C. § 3143(b).

Under § 3143(b)(1), the Court "shall order the release" of a defendant pending appeal if the Court finds that he is not likely to flee or pose a danger to the community and that the appeal presents a substantial question of law or fact that is likely to result in a reversal, new trial, or a reduced sentence less than that already served. Petitioner states that under *Bailey* his Motion presents a substantial question of law likely to result in release and that the Government has not asserted that he presents a risk of flight or a danger to the community. Indeed, he argues that given he has already served most of the sentences he received, it is unlikely he would flee during these § 2255 proceedings.

The Government Response argues that Petitioner's Motion must fail because he cannot establish "actual prejudice" pursuant to *U.S. v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) and *Ratliff v. U.S.,* 999 F.2d 1023, 1025 (6th Cir.1993). Specifically, the Government asserts that the evidence presented to the jury during trial left the jury with only one rational choice: that the defendant actively employed guns in drug transactions "on or about May 8, 1991."

To reach this conclusion, the Government employs two separate arguments: (1) Petitioner was engaged in drug transactions where he actively employed the Commando rifle *on or about May 8, 1991* and (2) on May 8, 1991, moments before the ATF agents entered Petitioner's residence, the Commando rifle was with Petitioner and he was making drug sales, even though the rifle was found in the bedroom partially under the bed.

In the first argument, the Government relies on the Sixth Circuit Pattern Criminal Jury Instructions which provide that "[t]he [G]overnment does not have to prove that the crime happened on that exact date. But the [G]overnment must prove that the crime happened reasonably close to that date." Thus, the Government urges that based on this flexible reading of the "on or about" language in the indictment, the jury reasonably found, based on Ms. Hill's testimony, that the Petitioner actively employed guns in drug transactions "on or about May 8, 1991", just as the indictment charged.

For its second argument, the Government contends that based on the ATF agents' testimony and some of Ms. Hill's testimony[7], the jury concluded that on May 8, 1991: (1) moments before the agents made entry into Petitioner's residence, Petitioner was operating as usual in the living room with the rifle next to him; (2) as the agents entered, Petitioner took the rifle into the bedroom, where Ms. Hill was, to hide it, leaving the "customers" (the 4 other individuals in the house) in the living room; (3) in his haste to hide the rifle under the bed, he left it partially disclosed; and (4) as the agents continued to make entry, Petitioner next attempted to rid himself of the drug evidence, but the agents caught him.

As for Petitioner's Motion for Bond Pending Resolution of his § 2255 Motion to Vacate, the Government argues that Petitioner has not meet his burden of demonstrating that he does not pose a flight risk or pose a danger to the community. Further, the Government suggests that because the likelihood of Petitioner's release is "negligible at best", Petitioner has also not shown that his Motion raises a substantial question of law or fact likely to result in his release.

## V. ANALYSIS

### A. Petitioner Has Failed to Meet His Burden under § 3143(b) for His Motion for Bond.

██ Petitioner has requested that this Court, pursuant to § 3143(b), release him on

7. The Government argues that while the jury believed Ms. Hill's testimony about Petitioner using a rifle in drug transactions at some point during May, the jury simultaneously rejected her testimony that she was alone in the bedroom—i.e., Petitioner was not in the bedroom and was running toward the kitchen.

bond from custody while these § 2255 proceedings are decided. To be released on these circumstances under § 3143(b), a petitioner must establish: (1) by clear and convincing evidence that he does not pose a danger to the community, and (2) that his motion raises a substantial question of law or fact likely to result in his release. Further, there is a heavy presumption against post-conviction release. *See U.S. v. Vance*, 851 F.2d 166, 170 (6th Cir.1988), *cert. denied*, 488 U.S. 893, 109 S.Ct. 231, 102 L.Ed.2d 220 (1988).

Although Petitioner's challenge to his § 924(c) conviction may meet the second prong, Petitioner has failed to meet his burden on the first prong. Indeed, the only evidence he has offered is his assertion that it is unlikely he will flee during these § 2255 proceedings because he has already served most of the sentences he received. This assertion standing alone is not sufficient to meet the clear and convincing evidence standard under the first prong. Accordingly, Petitioner's Motion for Bond must be denied.

**B. *The "Carrying" Charge Is a Potential Basis for Guilt.***

In the January 16, 1992 Superseding Indictment, Count 3 is entitled: 18 U.S.C. § 924(c)—USE OR CARRYING A FIREARM IN RELATION TO A DRUG TRAFFICKING OFFENSE. However, the Count itself only alleges that Petitioner "did knowingly use firearms", no allegation of "carrying" appears. Nonetheless, in its jury instructions, the Court instructed the jury that it could find Petitioner guilty of either using or carrying.

At first blush, this discrepancy may raise concerns of notice and due process. However, a review of the case law suggests otherwise. To pass constitutional muster, an indictment must meet a two-prong test: (1) the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he

faces, and (2) the indictment must be specific enough such that the defendant could plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts. *Russell v. U.S.*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962); *U.S. v. Martinez*, 981 F.2d 867, 872 (6th Cir.1992). In applying this test, the Sixth Circuit has held that for the first prong, an indictment sufficiently alleges the elements of a crime when the count cites the appropriate section of the U.S. Code, *U.S. v. Johnson*, 414 F.2d 22, 26 (6th Cir.1969), *cert. denied*, 397 U.S. 991, 90 S.Ct. 1112, 25 L.Ed.2d 399 (1970), and as a result, such a cite also meets the second prong because it is sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, *Martinez*, 981 F.2d at 872. Therefore, the Court concludes that to this extent the jury could have convicted Petitioner of "carrying" a firearm in violation of § 924(c).

**C. *The Court Must Vacate the § 924(c) Conviction Unless It Finds that the Jury Would Necessarily Have Convicted the Petitioner under a Post–Bailey Jury Instruction.***

Because Petitioner did not challenge the jury instruction on direct appeal[8], he must first establish a basis for the Court to consider his § 2255 petition at this late date. *See Frady*, 456 U.S. at 166, 102 S.Ct. at 1593. Specifically, he must: (1) show cause for his failure to previously raise the jury instruction issue; and (2) show actual prejudice of "constitutional dimensions." *Id.* at 167, 102 S.Ct. at 1594.

As the Government concedes, Petitioner has clearly met the "cause" prong due to the intervening *Bailey* decision which this Court must apply retroactively. *See Callanan v. United States*, 881 F.2d 229, 232 (6th Cir.1989); *Rose v. U.S.*, 94 F.3d 645, 1996 WL 455581, at *3 (6th Cir.1996) (unpublished); *Washington v. U.S.*, 94 F.3d 645,

---

**8.** On appeal, Petitioner raised two evidentiary challenges and also challenged the grounds for this Court's upward departure from his Sentencing Guideline range. The Sixth Circuit found that the this Court committed error regarding the evidentiary issues, but found that such error was harmless. *Fountain*, 2 F.3d at 670. The Sixth Circuit further found that this Court acted within its discretion in departing upward for sentencing. *Id.* at 666–69.

1996 WL 455589, at *2 (6th Cir.1996) (unpublished); *Laury v. U.S.*, 94 F.3d 645, 1996 WL 456038, at *1 (6th Cir.1996) (unpublished); *Jenkins v. U.S.*, 94 F.3d 644, 1996 WL 456043, at *2 (6th Cir.1996) (unpublished). Thus, the parties only contest the prejudice prong.

■ On a § 2255 Motion to Vacate, where the petitioner challenges a § 924(c) "Fortress Theory" jury instruction [9], the actual prejudice prong means that a court must vacate the conviction unless it finds that the jury would necessarily have convicted the petitioner under a post-*Bailey* jury instruction. *See U.S. v. Moore*, 76 F.3d 111, 112 (6th Cir.1996); *See also Callanan*, 881 F.2d at 231. Thus, as to the "use" element, a court must vacate unless it determines that the jury necessarily would have found a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense—such as the silent but obvious and forceful presence of a gun on a nearby table. *Bailey,* —— U.S. at ——, 116 S.Ct. at 508. Similarly, as to the "carrying" element, a court must vacate unless it determines that the jury would necessarily have found that the firearm was on the petitioner or within his or her reach due to his or her transporting it, *Moore,* 76 F.3d at 113.

### D. *Applying the Post–Bailey Standards for "Use" and "Carrying" to Petitioner's § 924(c) Conviction.*

■ This Court instructed the jury on Count 3, the § 924(c) charge, as follows:

> ... the word "carries" does not require that the [G]overnment prove actual possession, nor does the word "use" require the [G]overnment to prove that [Petitioner] brandished or displayed the firearm. Rather, it is sufficient to convict [Petitioner] if you find beyond a reasonable doubt that he had possession of a firearm or that he had a firearm under his control in any manner which facilitated his possession with the intent to distribute cocaine or cocaine base. Thus, if you find beyond a reasonable doubt that [Petitioner] had a weapon readily accessible to secure, enforce or protect the drug transaction, you can find him guilty....

(Trial Transcript, 01/29/92). Using this instruction, the jury found Petitioner guilty on Count 3.

The Government has proffered two scenarios, each allegedly consistent with post-*Bailey* instructions, under which the jury reached this verdict. First, the Government postulates that the jury, relying on Ms. Hill's testimony that Petitioner actively employed the Commando during drug transactions during the month of May, found that Petitioner did so on or about May 8, 1991.

Alternatively, the Government suggests that the jury relied on the ATF agent's testimony and some of Ms. Hill's testimony to conclude that on May 8, 1991: (1) moments before the agents made entry into Petitioner's residence, Petitioner was operating as usual in the living room with the rifle next to him; (2) as the agents entered, Petitioner took the rifle into the bedroom, where Ms. Hill was, to hide it, leaving the "customers" (the 4 other individuals in the house) in the living room; (3) in his haste to hide the rifle under the bed, he left it partially disclosed; and (4) as the agents continued to make entry, Petitioner next attempted to rid himself of the drug evidence, but the agents caught him.

The Court will address each of these arguments in turn. The Government's first argument would require the Court to adopt a very broad meaning of the "on or about" language in the indictment. Specifically, the Government asks the Court to read Ms. Hill's testimony that Petitioner typically kept the Commando rifle near him to intimidate drug customers and that Petitioner engaged in drug transactions sometime in May as sufficient evidence for a jury to conclude necessarily that on or about May 8, 1991

---

**9.** Since the Government previously prosecuted "Fortress Theory" cases under § 924(c), the instruction given during Petitioner's trial was a standard instruction which allowed the jury to convict under such a theory. Since *Bailey* effec- tively overruled convictions under the Fortress Theory, the instruction given during Petitioner's trial is now considered "inadequate". *See, e.g., U.S. v. Moore,* 76 F.3d 111, 113–14 (6th Cir. 1996).

Petitioner used or carried a firearm in relation to a drug trafficking crime.

■ With respect to the on or about language in an indictment, the Sixth Circuit Pattern Criminal Jury Instructions provide that "[t]he [G]overnment does not have to prove that the crime happened on that exact date. But the [G]overnment must prove that the crime happened reasonably close to that date." As the Sixth Circuit has further explained,

' when 'on or about' language is used in an indictment, proof of the exact date of an offense is not required as long as a date reasonably near that named in the indictment is established ... [—] *the 'reasonably near' rule ... contemplates a single act the exact date of which is not precisely known by the grand jury* and, therefore, does not need to be proved with exactitude.

*United States v. Ford,* 872 F.2d 1231, 1236 (6th Cir.1989), *cert. denied,* 495 U.S. 918, 110 S.Ct. 1946, 109 L.Ed.2d 309 (1990) (*emphasis* added).

Applying this law to the facts of this case suggests that the Government's argument here must fail for two reasons. First, the Court cannot say that the jury would necessarily weave Ms. Hill's statements together to find that on or about May 8, 1991 Petitioner did in fact have the Commando rifle next to him to intimidate customers during drug deals. The jury could have concluded that although it was Petitioner's habit to have the rifle next to him during drug deals, on or about May 8 Petitioner left the rifle in the bedroom and did not bring it with him into the living room. Thus, it is just as likely that the jury actually convicted Petitioner under the impermissible pre-*Bailey* Fortress Theory jury instructions, finding that on or about May 8 Petitioner used or carried the Commando rifle in relation to a drug trafficking crime by keeping the rifle partially under the bed in the bedroom with Ms. Hill while he conducted drug sales in the living room.

■ More importantly, the Government's application of the "on or about" indictment language in this case cannot stand in light of the *Ford* requirement of "*a single act* the exact date of which is not precisely known," 872 F.2d at 1236 (*emphasis* added). Ms. Hill's testimony about Petitioner's general habits and general activities sometime during the month of May cannot constitute "a single act the exact date of which is not precisely known." *See, Id.* The Government confuses the leeway given in pleading *when* a specific identified act took place with the necessity of pleading *the specific act itself* that is the subject of the indictment. If Ms. Hill testified that she saw Petitioner brandish the gun in connection with a specific drug sale and that sale was the subject of the indictment, but she was off on the date by several days, the "on or about" language of the indictment would be sufficient to support a conviction. But, where she only testifies to Petitioner's general proclivities to brandish a gun, the "on or about" language cannot be stretched to encompass that specific act at a specific time alleged in the indictment. This is because the indictment must allege the specific crime itself. Here, Petitioner's general habit cannot provide the basis for conviction on a charge that he used the gun in that manner in connection with the specific sale charged in the indictment. This is particularly true given the posture of this case, since the Government has the burden of showing that the jury would necessarily have convicted Petitioner under a post-*Bailey* instruction. Further, this view is buttressed by the language the Sixth Circuit used in connection with its Fed.R.Evid. 404(b) holding in Petitioner's appeal where the Court stated:

Fountain was indicted for activities involving drug possession, firearm violations, and destruction of evidence, activities that occurred on May 8 and June 4, 1991. There was no larger, overall "plan" or goal of which the crimes for which Fountain was on trial and the crimes he previously committed were related parts. That Fountain sold crack out of pill bottles or used firearms in connection with drug trafficking on other occasions does not establish anything with respect to what he did on May 8 ... except to suggest the forbidden inference that "if he did it before he probably did it again."

*Fountain,* 2 F.3d at 667–68.

The Court confesses that it has some quarrel with the breadth of this holding, as Fed.

R.Evid. 406 clearly permits the use of habit evidence to show that a person acted in conformity with that habit on a specific occasion, provided a sufficient foundation has been laid to establish the habit. Thus, if testimony were to establish clearly that is was Petitioner's unalterable habit to brandish a weapon in connection with every drug deal, that testimony could be used to show he acted in conformity with that habit on May 8, 1991. However, Ms. Hill's testimony falls short of providing that kind of evidentiary foundation.

Ms. Hill testified that sometime in' May Petitioner intimidated customers with the Commando rifle while he dealt drugs. However, as to May 8, Ms. Hill stated that she was in the bedroom alone, where the rifle was found partially under the bed, while Petitioner was, perhaps, in the living room. Meanwhile, the ATF agents testified that after they entered the residence they observed Petitioner running from the bedroom, where the rifle was later discovered partially under the bed, into the bathroom in order to get rid of the cocaine. However, Ms. Hill testified that when the ATF agents entered the house, she saw Petitioner run to the kitchen as she proceeded from the bedroom towards the front of the house.

Based on this testimony, the Court cannot conclude that the jury necessarily would have found that during the specific drug deals on May 8, 1991, Petitioner either used the Commando rifle to intimidate customers or that the Commando rifle was on Petitioner or within his reach due to his transporting it. Accordingly, the Court must grant Petitioner's Motion to Vacate.[10]

As this result evidences, the narrow construction that the Supreme Court and appellate courts have given the terms "uses" and "carries" in *Bailey* and its progeny has had significant consequences for cases under 18 U.S.C. § 924(c)[11]. *See, Moore,* 76 F.3d at 113; *Riascos–Suarez,* 73 F.3d at 623; *United States v. Santos,* 84 F.3d 43 (2d Cir.1996); *United States v. Spring,* 80 F.3d 1450 (10th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 385, 136 L.Ed.2d 302 (1996); *United States v. Baker,* 78 F.3d 1241 (7th Cir.1996); *United States v. Hernandez,* 80 F.3d 1253 (9th Cir. 1996). In particular, people who "use" or "carry," as the terms are colloquially understood, weapons in relation to drug trafficking crimes may escape criminal prosecution and conviction. For example, people who, during drug deals, "use" a weapon to embolden themselves or to provide security may escape criminal liability· for these acts so long as they keep quiet about the weapon, keep it hidden, keep it stationary, and keep it out of arms reach. Nevertheless, it is the responsibility of Congress, not the courts, to change this law to reflect the realities of drugs and violence in America today.

### E. *Re–Sentencing Petitioner under a Two–Level Enhancement Pursuant to U.S.S.G. § 2D1.1(b)(1).*

In its Supplemental Brief in Response to Petitioner's § 2255 Motion, the Government requests that if the Court vacates Petitioner's § 924(c) conviction, it consider re-sentencing Petitioner under a two-level enhancement according to U.S.S.G. § 2D1.1(b)(1). However, as Petitioner argues in his Supplemental Response, this re-sentencing would

---

**10.** The Court notes that the Government's suggestion that the Court follow Judge Zatkoff's decision in *Johnson v. U.S.,* 96–CV–70343–DT, is unwarranted. First, in that decision, Judge Zatkoff refused to apply *Bailey* retroactively because the Sixth Circuit had not yet done so. Second, an agent in that case testified that the petitioner picked up a sawed-off shotgun, held it in his right hand and escorted the agent to the door of the house, all pursuant to a drug transaction where the agent was the buyer and the petitioner was the seller. Obviously, no testimony in the instant matter even begins to approach the agent's testimony in *Johnson.*

Additionally, having granted Petitioner's Motion to Vacate on other grounds, the Court need

not consider Petitioner's allegation that the Court committed error by not instructing the jury regarding Ms. Hill's status as a narcotic addict.

**11.** As a result of these decisions, many defendants convicted under § 924(c) have successfully challenged their convictions under *Bailey* and its progeny through § 2255 petitions. However, Congress has passed the 1996 Antiterrorism and Effective Death Penalty·Act, Pub.L.No. 104–132, tit. I, § 105 which provides that prisoners have only one year from the date of the *Bailey* decision (December 6, 1996) to seek relief under that decision.

be moot. Specifically, the Guidelines range at sentencing was 33 to 41 months, based on an Adjusted Offense Level of 20 and the Criminal History Category I. With an additional two-points pursuant to § 2D1.1(b)(1), the Adjusted Offense would be 22, and the Guidelines range would be 41 to 51 months. Even assuming that the Court again departed upward by five months and imposed a 56 month sentence, Petitioner would have to be released, as he has served nearly a year in excess of a 56 month sentence.

The Court notes that different courts have reached diametrically opposed positions on the re-sentencing issues. Some courts have held that sentences imposed on separate convictions must be viewed separately for purposes of § 2255, and that they have jurisdiction under § 2255 to vacate or correct only the specific sentence challenged by the movant. *See, e.g., Warner v. U.S.*, 926 F.Supp. 1387, 1397 (E.D.Ark.1996); *U.S. v. Forrest*, 934 F.Supp. 731, 735–36 (E.D.Va.1996); *Rodriguez v. U.S.*, 933 F.Supp. 279, 283–85 (S.D.N.Y.1996); *Beal v. U.S.*, 924 F.Supp. 913, 917 (D.Minn.1996). Furthermore, because § 2255 permits only criminal defendants to collaterally attack sentences imposed upon them, some courts have held that they cannot entertain Government requests for re-sentencing. *See, e.g., Warner*, 926 F.Supp. at 1397; *Dossett v. U.S.*, 931 F.Supp. 686, 687–88 (D.S.D.1996). Additionally, where the petitioner has served all of the time under his "non § 924(c)" sentences, some courts have found that double jeopardy and the petitioner's interest in the finality of sentencing also prevent re-sentencing. *See, e.g., Warner*, 926 F.Supp. at 1393–95; *U.S. v. Garner*, 32 F.3d 1305, 1312 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1366, 131 L.Ed.2d 222 (1995).

Other courts, nevertheless, have reached contrary results on both the jurisdictional issue, *Woodhouse v. U.S.*, 934 F.Supp. 1008, 1011 (C.D.Ill.1996); *U.S. v. Tolson*, 935 F.Supp. 17, 19–22 (D.D.C.1996); *Merritt v. U.S.*, 930 F.Supp. 1109, 1111–15 (E.D.N.C. 1996); *Mixon v. U.S.*, 926 F.Supp. 178, 180–81 (S.D.Ala.1996), and the double jeopardy issue, *Woodhouse*, 934 F.Supp. at 1014–15; *Merritt*, 930 F.Supp. at 1115.

However, because the Court agrees with Petitioner that re-sentencing in this matter is moot, as the Government conceded at the hearing, the Court need not reach these issues.

## VI. *CONCLUSION*

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Petitioner's Motion for Bond be DENIED;

IT IS FURTHER ORDERED that Petitioner's Motion to Vacate be GRANTED; and

IT IS FURTHER ORDERED that the Government's request for re-sentencing be DENIED as moot.